## J. C. BOWERS *v.* P. M. CRARY, AND A. W. POOL, SHERIFF OF PLACER COUNTY.

FIVE YEARS WITHIN WHICH EXECUTION MAY ISSUE. — The five years of limitation within which an execution for an unsatisfied balance on a foreclosure sale may be taken out, commences to run from the date of the judgment of foreclosure, and not from the date when the balance was docketed.

PROCESS TO ENFORCE JUDGMENT—TIME OF ISSUING.—Every process which may be required to completely enforce a judgment, must be taken out within five years after its entry.

DOCKETING BALANCE.—The docketing of a balance remaining due after sale of mortgaged property, is not an entry of a new judgment for such balance.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

The defendants recovered judgment in the Court below, and plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Jo Hamilton*, for Appellant, argued that the judgment was entered when the decree of foreclosure was rendered, January 19th, 1861, and that the five years commenced running from

that time; and cited *Lowry* v. *Illsley*, 1 Cal. 28; *Burke* v. *Table Mountain Water Co.*, 12 Cal. 403; *McMillan* v. *Richards*, 12 Cal. 468; *Gray* v. *Palmer*, 28 Cal. 416; and *Stout* v. *Macey*, 22 Cal. 647.

*Charles A. Tuttle*, for Respondent, argued, that, as no execution could have issued on the judgment of foreclosure, other than for a sale of the mortgaged property, until a balance was reported and docketed, (Prac. Act, Sec. 246,) that the five years' limitation under the two hundred and ninth section of the Practice Act should commence running from the time the balance was docketed; that the word "judgment" in the two hundred and ninth section must refer to such judgment as an execution could issue on, or it would be meaningless; and that the docketing was the entry of a judgment; and cited *Hobbs* v. *Duff*, 23 Cal. 623.

By the Court, SANDERSON, J. :

This is an action to restrain the collection of a balance due on a judgment foreclosing a mortgage.

The judgment of foreclosure was rendered on the 19th of January, 1861. The mortgaged premises were subsequently sold by the Sheriff, who returned a deficiency which was docketed on the 3d day of October, 1861. For the unsatisfied balance thus due, the defendant Crary caused an execution to be issued on the 10th day of May, 1866—more than five years after the judgment of foreclosure was rendered, but less than five years after the balance left due by a sale of the mortgaged premises was docketed.

The only question presented is whether the period of five years, within which an execution for an unsatisfied balance on a foreclosure sale may be taken out, commences to run from the date of the judgment of foreclosure or from the date when the balance was docketed.

The provisions of the Practice Act applicable to the question are found in sections two hundred and nine and two

hundred and forty-six.   The first provides that "a party in whose favor a judgment is given may, at any time within five years after the entry thereof, issue a writ of execution for its enforcement, as prescribed in this chapter."   The latter prescribes the manner in which judgments of foreclosure are to be enforced, and is to the effect that "the Court shall, by its judgment, direct a sale of the encumbered property (or so much thereof as shall be necessary) and the application of the proceeds of the sale to the payment of the costs and expenses of the sale, the costs of the suit and the amount due to the plaintiff.   If it shall appear from the Sheriff's return that there is a deficiency of such proceeds and a balance still due to the plaintiff, the judgment shall then be docketed for such balance against the defendant or defendants personally liable for the debt, and shall, from the time of such docketing, be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the Clerk of the Court, in like manner and form as upon other judgments, to collect such balance or deficiency from the property of the judgment debtor."

It will be observed that nothing is said in this latter section as to the time within which process may be issued, either for the sale of the encumbered property or for the collection of any deficit that may be found to exist after a sale has been had, but the language is confined to the form of the particular kinds of judgments therein provided for, and the mode and manner of enforcing them.

The mere fact that two kinds of final process may be required to enforce a judgment of foreclosure is of no consequence and does not of itself affect the reason of the rule. These different kinds are provided for in the two hundred and thirteenth section, which is in the same chapter with the two hundred and ninth, and therefore expressly referred to by the closing phrase of the latter section.

Our conclusion is that the two hundred and forty-sixth section only prescribes the mode and manner of enforcing judgments of foreclosure, and that the time within which they

may be enforced is prescribed by the two hundred and ninth, and that every process which may be required to completely enforce them must be taken out within five years after entry.

The only mode by which the theory of the respondent can be sustained is to hold that the balance, when docketed, becomes a new and independent judgment; but this is forbidden by the language employed. The language is not that the Clerk shall enter a judgment for such balance in his judgment book, but it is that he shall enter in his docket the judgment—that is to say, the judgment which has been already entered—for such balance. The distinction is obvious. It only remains to be added that this view renders the Practice Act consistent with the Statute of Limitations in all respects so far as the present question is concerned.

Judgment reversed and the Court below advised to enter a judgment for plaintiff.