[No. S077219. May 24, 2001.]

DANIEL GRISET et al., Plaintiffs and Appellants, v.
FAIR POLITICAL PRACTICES COMMISSION, Defendant and
Respondent.

COUNSEL

Bopp, Coleson & Bostrom, James Bopp, Jr.; Reed & Davidson, Darryl R. Wold, Dana W. Reed, Bradley W. Hertz and Rondi J. Walsh for Plaintiffs and Appellants.

Bell, McAndrews & Hiltachk, Charles H. Bell, Jr.; Law Offices of Lowell Finley and Lowell Finley for California Political Attorneys Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bill Lockyer, Attorney General, Susan R. Oie, Deputy Attorney General; Steven G. Churchwell, Liane Randolph and Deborah Maddux Allison for Defendant and Respondent.

James K. Hahn, City Attorney (Los Angeles), Pedro Echeverria, Chief Assistant City Attorney, Mark L. Brown and Anthony Saul Alperin, Assistant City Attorneys; Jayne W. Williams, City Attorney (Oakland); Louise Renne, City Attorney (San Francisco); and Joan R. Gallo, City Attorney (San Jose) for Cities of Los Angeles, Oakland, San Francisco and San Jose as Amici Curiae on behalf of Defendant and Respondent.

Richard L. Hasen for California Professors, the Brennan Center for Justice at NYU School of Law, CALPIRG and the Center for Governmental Studies as Amici Curiae on behalf of Defendant and Respondent.

Daniel C. Manatt for Common Cause of California, League of Women Voters of California, Californians for Political Reform Foundation and Voters Rights 2000 as Amici Curiae on behalf of Defendant and Respondent.

---

OPINION

**KENNARD, J.**—Government Code section 84305[1] requires candidates for public office, and individuals or groups supporting or opposing a candidate or ballot measure, to identify themselves on any mass mailings they send to prospective voters. In *Griset v. Fair Political Practices Com.* (1994) 8

---

[1]All further unlabeled statutory references are to the Government Code.

Cal.4th 851, 855 [35 Cal.Rptr.2d 659, 884 P.2d 116] (*Griset I*), this court unanimously upheld the statute's validity as to candidates and candidate-controlled committees. Because that holding resolved the case before us, we, unlike the Court of Appeal, did not address the broader question of the constitutional validity of section 84305 with respect to persons and entities *other than* candidates and candidate-controlled committees.

After our decision in *Griset I* became final and after the United States Supreme Court denied plaintiffs' petition for a writ of certiorari, plaintiffs, in the same action, again asked the superior court to declare section 84305 unconstitutional. Plaintiffs relied on a decision by the United States Supreme Court, *McIntyre v. Ohio Elections Comm'n* (1995) 514 U.S. 334 [115 S.Ct. 1511, 131 L.Ed.2d 426], which held unconstitutional the imposition of a fine on an individual who had distributed anonymous leaflets opposing a proposed school tax levy. That decision was filed after *Griset I,* but before the high court's denial of plaintiffs' petition for a writ of certiorari in *Griset I.*

The superior court denied plaintiffs' request and entered judgment for defendant Fair Political Practices Commission. On plaintiffs' appeal from that judgment, the Court of Appeal reversed.

The threshold issue in the matter now before us (*Griset II,* which arises from the same action as *Griset I*) is whether the Court of Appeal had the authority to entertain plaintiffs' second appeal in the same action, to again consider the constitutionality of section 84305 after our decision in *Griset I* had become final. We conclude the Court of Appeal lacked such authority.

## I. FACTS AND PROCEEDINGS

### A. *Administrative Proceedings*

In 1988, Daniel Griset was a candidate for reelection to the Santa Ana City Council. A month before the election, the Griset Campaign Committee, which Griset controlled, sent prospective voters a mass mailing using the letterhead Washington Square Neighborhood Association. The mailing did not identify Griset or the Griset Campaign Committee as the sender. That same month, the Santa Ana Progress Committee, also controlled by Griset, sent prospective voters four mass mailings attacking Griset's opponent. The mailings identified the Santa Ana Progress Committee as the sender but failed to say that candidate Griset controlled the committee. (*Griset I, supra,* 8 Cal.4th at p. 854.) As we noted at the outset, section 84305 requires candidates for public office, and individuals or groups supporting or opposing a candidate or ballot measure, to identify themselves on any mass mailings they send to prospective voters.

In March 1990, the Fair Political Practices Commission (FPPC) initiated administrative enforcement proceedings against Griset and the two committees he controlled, alleging that the above described mass mailings violated section 84305. (*Griset I, supra,* 8 Cal.4th at p. 854.) In February 1991, the FPPC fined plaintiffs a total of $10,000 for violating section 84305.

B. *Judicial Proceedings Before High Court's Denial of Certiorari in Griset I*

In October 1990, while the administrative proceedings before the FPPC were pending, plaintiffs (Griset and the two committees he controlled) brought this action in the Orange County Superior Court against the FPPC challenging the constitutionality of section 84305 and seeking to enjoin its enforcement. The court denied plaintiffs' motion for a preliminary injunction, and the FPPC's administrative enforcement action against plaintiffs proceeded.

After the FPPC imposed a $10,000 fine against plaintiffs in the administrative proceeding, plaintiffs amended and supplemented their superior court complaint to allege four causes of action. The first cause of action was for a writ of administrative mandate (Code Civ. Proc., § 1094.5) directing the FPPC to rescind its administrative decision. The second cause of action asked the court to declare Government Code section 84305 unconstitutional both on its face and as applied to plaintiffs. The third cause of action sought to enjoin the FPPC from collecting any fine from plaintiffs. The fourth cause of action sought to enjoin the FPPC from enforcing section 84305 in the future against plaintiffs or others. Central to all four causes of action was plaintiffs' allegation that section 84305 violated the right to free speech under the First Amendment to the United States Constitution and article I, section 2 of the California Constitution.

In July 1991, plaintiffs filed motions in the superior court for a peremptory writ of mandate on their first cause of action, for summary adjudication that there was no defense to their remaining causes of action, and for summary judgment.

The superior court found section 84305 unconstitutional in prohibiting anonymous mass mailings by individuals or committees other than candidate and candidate-controlled committees during an election campaign, but constitutional in prohibiting anonymous mass mailings by candidates and candidate-controlled committees, as in plaintiffs' case. Accordingly, the court denied plaintiffs' motions. The court's order denying plaintiffs' petition for a writ of administrative mandate stated the order was "a final determination

of [plaintiffs'] First Cause of Action for administrative mandamus under Code of Civil Procedure § 1094.5," adding "no further proceedings are to be held on that cause of action." The order denying the motions for summary adjudication and for summary judgment expressly stated that the court's denial was not based on the existence of "any triable issue as to any material fact." The trial court's rulings were not formally entered as a judgment.

Plaintiffs unsuccessfully petitioned the Court of Appeal for a writ of mandate. They then appealed from the superior court's order denying their petition for a writ of administrative mandate. A majority of the Court of Appeal affirmed the trial court's ruling. The court held that section 84305 was constitutional as to candidates and candidate-controlled committees such as plaintiffs. The court also concluded the statute was unconstitutional with regard to persons and entities *other than* candidates and committees under their control. We granted plaintiffs' petition for review.

We unanimously affirmed the judgment of the Court of Appeal. (*Griset I, supra,* 8 Cal.4th 851.) We agreed with both the trial court and the Court of Appeal that section 84305 was constitutional as to plaintiffs (candidate Griset and two committees he controlled). We expressed no view, however, on the validity of section 84305 with regard to persons and entities *other than* candidates and their controlled committees. (*Griset I, supra,* at p. 855.)

We filed our decision in *Griset I* on November 28, 1994, and issued the remittitur on December 29, 1994. In February 1995, plaintiffs petitioned the United States Supreme Court for review by writ of certiorari. On April 19, 1995, while plaintiffs' petition was pending, the high court issued its decision in *McIntyre v. Ohio Elections Comm'n, supra,* 514 U.S. 334 (*McIntyre*), holding unconstitutional the imposition of a fine on an individual who had distributed anonymous leaflets opposing a proposed school tax levy. Five days later, on April 24, 1995, the high court denied plaintiffs' certiorari petition. (*Griset v. Fair Political Practices Commission* (1995) 514 U.S. 1083 [115 S.Ct. 1794, 131 L.Ed.2d 722].)

C. *Proceedings After High Court's Denial of Certiorari in Griset I*

In August 1995, plaintiffs "renewed" in the superior court their 1991 motions for summary adjudication and for summary judgment as to the second, third, and fourth causes of action for declaratory and injunctive relief, arguing that under the high court's decision in *McIntyre, supra,* 514 U.S. 334, section 84305 was unconstitutional. The FPPC filed an amended answer to plaintiffs' first amended and supplemental complaint, asserting the affirmative defenses of res judicata and issue preclusion, and it moved for

judgment on the pleadings. The court granted summary judgment for the FPPC, and it denied as moot the FPPC's motion for judgment on the pleadings.[2] Judgment was entered in favor of the FPPC. Plaintiffs appealed. (*Griset II*, this case.)

This time, the Court of Appeal held section 84305 to be unconstitutional *in its entirety* (that is, not only as to persons and entities other than candidates and the committees they controlled, but also with regard to candidates and candidate-controlled committees), and it reversed the superior court's judgment for the FPPC. The Court of Appeal's majority found no procedural impropriety in plaintiffs' second appeal in the same case. In its view, plaintiffs could "revive" the litigation because the superior court had not entered a formal judgment in 1991. After recognizing that in *Griset I, supra,* 8 Cal.4th 851, this court had decided "the constitutionality of section 84305," the majority observed: "Even so, while the plaintiffs' second, third, and fourth causes might have been moribund when the case returned from the [high court's] denial of certiorari, they were not declared dead and properly buried in a formal final judgment. The not quite yet dead corpse was still walking, as attested by the fact that the substantive winner, the commission [FPPC], still found it necessary to file an *answer* to the plaintiffs' complaint." (Original italics.)

The Court of Appeal majority then concluded that the high court's decision in *McIntyre, supra,* 514 U.S. 334, had changed controlling law and consequently the "injustice" exception to the doctrine of law of the case allowed the Court of Appeal to reconsider our decision in *Griset I.* (See generally *People v. Stanley* (1995) 10 Cal.4th 764, 786-787 [42 Cal.Rptr.2d 543, 897 P.2d 481] [an intervening change in controlling law is an exception to the general rule that an appellate court's statement of principle of law becomes law of the case and controls in later proceedings when application of the doctrine of law of the case would result in an unjust decision].)

The dissenting Court of Appeal justice was of the view that in *Griset I, supra,* 8 Cal.4th 851, this court had impliedly converted the superior court's 1991 order into a final judgment, which this court fully affirmed on appeal, leaving neither the superior court nor the Court of Appeal with authority to reconsider the merits of plaintiffs' causes of action after our decision in *Griset I.*

We granted the FPPC's petition for review.

---

[2]The trial court granted summary judgment for the FPPC under former Orange County Superior Court, Local Rules, former rule 518(I). That rule, adopted in 1984 and repealed in 1998, allowed a trial court to grant summary judgment in favor of a party opposing a motion for summary judgment even though that party had not itself moved for summary judgment.

To determine the threshold issue of whether the Court of Appeal had the authority to again consider the constitutionality of section 84305 after our decision in *Griset I, supra,* 8 Cal.4th 851, had become final, we begin with an analysis of the scope of the matter before us in *Griset I.*

## II. NATURE AND SCOPE OF GRISET I

■■■ Was the superior court's decision at issue in *Griset I, supra,* 8 Cal.4th 851, a final judgment determining the rights of the parties, or was it a more limited holding leaving some substantive issues to be resolved in future proceedings? We conclude it was a final judgment that fully determined the rights of the parties, as explained below.

Generally, a reviewing court acts in the procedural context of either a direct appeal or a writ proceeding. (See *Leone v. Medical Board* (2000) 22 Cal.4th 660, 666 [94 Cal.Rptr.2d 61, 995 P.2d 191]; *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 92-93 [40 Cal.Rptr.2d 839, 893 P.2d 1160] (plur. opn. of Kennard, J.).) In *Griset I,* after the Court of Appeal's denial of plaintiffs' writ petition, plaintiffs filed a notice of appeal. The Court of Appeal's disposition of the first appeal read "Judgment Affirmed," a phrase that is used only in the context of a direct appeal from a judgment. After granting plaintiffs' petition for review, we unanimously affirmed the judgment of the Court of Appeal. (*Griset I, supra,* 8 Cal.4th at p. 867.) It follows that *Griset I* was a direct appeal; it was not a writ proceeding.

We next consider the nature and scope of the superior court's ruling that was the subject of plaintiffs' appeal in *Griset I, supra,* 8 Cal.4th 851. We begin by assuming, as the Court of Appeal evidently did, that the only ruling under review in *Griset I,* plaintiffs' first appeal, was the superior court's denial of the petition for writ of administrative mandate.

■■■ A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074]; see *Olson v. Cory* (1983) 35 Cal.3d 390, 398 [197 Cal.Rptr. 843, 673 P.2d 720].) Was the superior court's 1991 ruling denying plaintiffs' petition for a writ of administrative mandate an appealable order? We conclude it was not.

A trial court's order is appealable when it is made so by statute. (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976]; *California Casualty Ins. Co. v. Municipal Court* (1998) 66 Cal.App.4th 1410, 1412 [78 Cal.Rptr.2d 657].) There is no statute that makes an order denying a writ of administrative mandate petition separately appealable when, as

here, the petition has been joined with other causes of action that remain unresolved. (See Code Civ. Proc., § 904.1.)

In addition, allowing an appeal in that situation would be contrary to the "one final judgment" rule, a fundamental principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case. "The theory is that piecemeal disposition and multiple appeals in a single action would be oppressive and costly, and that a review of intermediate rulings should await the final disposition of the case." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 58, p. 113; see *Knodel v. Knodel* (1975) 14 Cal.3d 752, 760 [122 Cal.Rptr. 521, 537 P.2d 353]; *In re L. A. County Pioneer Society* (1953) 40 Cal.2d 852, 858 [257 P.2d 1].) When an order denying a petition for writ of administrative mandate does not dispose of all causes of action between the parties, allowing an appeal from the denial order would defeat the purpose of the one final judgment rule by permitting the very piecemeal dispositions and multiple appeals the rule is designed to prevent.

 We now consider whether the 1991 superior court order at issue in *Griset I, supra,* 8 Cal.4th 851, was an *appealable judgment.* It was not an appealable judgment if it disposed of only one of the causes of actions pending between the parties, an issue we explain below.

A judgment is the final determination of the rights of the parties. (Code Civ. Proc., § 577.) In its 1991 order denying plaintiffs' petition for writ of administrative mandate, the superior court described its order as a final determination of plaintiffs' first cause of action for administrative mandate. Unless the order also resolved plaintiffs' other three causes of action, there would not be a final determination of the parties' rights and thus the order could not be an appealable judgment. As this court has explained, "an appeal cannot be taken from a judgment that fails to complete the disposition of all causes of action between the parties even if the causes of action disposed of by judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743 [29 Cal.Rptr.2d 804, 872 P.2d 143].) Thus, "the denial of a petition for writ of mandate is not appealable if other causes of action remain pending between the parties." (*Nerhan v. Stinson Beach County Water District* (1994) 27 Cal.App.4th 536, 540 [33 Cal.Rptr.2d 10]; see also *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52, fn. 5 [51 Cal.Rptr.2d 837, 913 P.2d 1046].)

In 1991, when plaintiffs filed their original notice of appeal, some Court of Appeal decisions had suggested that a party could appeal from a judgment

denying a petition for writ of mandate even though other causes of action remained pending between the parties. (See *California Teachers Assn. v. Board of Education* (1980) 109 Cal.App.3d 738, 751 [167 Cal.Rptr. 429]; *Elmore v. Imperial Irrigation Dist.* (1984) 159 Cal.App.3d 185, 190-191 [205 Cal.Rptr. 433]; *Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1086 [271 Cal.Rptr. 44]; *Native Sun/Lyon Communities v. City of Escondido* (1993) 15 Cal.App.4th 892, 896 & fn. 1 [19 Cal.Rptr.2d 344].) But our decision in *Morehart v. County of Santa Barbara, supra,* 7 Cal.4th 725, 736-743 (*Morehart*), although it did not expressly refer to these cases, rejected the notion that a party could appeal from a judgment that failed to dispose of all causes of action between the parties. *Morehart* reaffirmed well-established law. (See, e.g., *Bank of America v. Superior Court* (1942) 20 Cal.2d 697, 701 [128 P.2d 357] ["There cannot be a separate judgment as to one count in a complaint containing several counts. On the contrary, there can be but one judgment in an action no matter how many counts the complaint contains."].)

■ Having examined the assumption, evidently made by the Court of Appeal, that plaintiffs' 1991 appeal at issue in *Griset I, supra,* 8 Cal.4th 851, was taken only from the superior court's denial of the petition for writ of administrative mandate, we conclude that this assumption is untenable because such a denial, being neither an appealable order nor a final judgment, would not have been appealable. Accordingly, we now consider the other possibility, that the appeal at issue in *Griset I* was taken from a judgment disposing of *all four* causes of action between plaintiffs and the FPPC, even though there was no formal entry of judgment in the superior court.

■ As we observed earlier, a judgment is a final determination of the rights of the parties. (Code Civ. Proc., § 577.) In *Lyons v. Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11], we articulated the following standard to determine whether an adjudication is final and appealable: "It is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory." (Accord, *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9 [270 Cal.Rptr. 796, 793 P.2d 2] [summary adjudication on seventh cause of action effectively disposing of entire case is an appealable judgment]; *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695, 699 [63 Cal.Rptr. 724, 433 P.2d 732] [order of dismissal "in legal effect a final judgment from which an

appeal lies"]; *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1101-1102 [39 Cal.Rptr.2d 737] [order granting summary adjudication of one of three causes of action but effectively disposing of the case construed as appealable judgment].)

■■■ Applying that test here, we conclude the 1991 superior court ruling that was the subject of appellate review in *Griset I, supra,* 8 Cal.4th 851, was a final judgment. As we explain below, the superior court's denial of plaintiffs' petition for a writ of mandate disposed of all issues in the action between plaintiffs and the FPPC, because it completely resolved plaintiffs' allegation—essential to all of plaintiffs' causes of action—that section 84305 was unconstitutional.

When the superior court in 1991 denied plaintiffs' petition for a writ of administrative mandate on plaintiffs' first cause of action to direct the FPPC to rescind its imposition of a $10,000 fine against plaintiffs, the court—for reasons expressed in its order denying plaintiffs' motions for summary judgment and for summary adjudication—upheld the constitutionality of section 84305 as to candidates and candidate-controlled committees such as plaintiffs and stated that plaintiffs' petition for a writ of mandate "is denied on the merits."

The superior court's ruling on plaintiffs' first cause of action also disposed of plaintiffs' second cause of action asking the court to declare section 84305 unconstitutional not only as to candidates and candidate-controlled committees, but also as to others. The court's statement of its reasons for its decision, attached to the order denying plaintiffs' motions for summary adjudication and summary judgment, shows that the court found the statute constitutional with respect to candidates and candidate-controlled committees, but unconstitutional as to individuals or committees *other than* candidates and candidate-controlled committees. The court remedied the constitutional infirmity by narrowing the definition of "committee" to include only a candidate-controlled committee. Thus, contrary to plaintiffs' argument, the superior court's ruling fully addressed and resolved the constitutionality of the statute as requested in plaintiffs' second cause of action.

Also, the superior court's ruling necessarily disposed of plaintiffs' third cause of action, which sought to enjoin the FPPC from collecting the $10,000 fine it had imposed against plaintiffs in the administrative proceeding. Because plaintiffs collectively are a candidate and two candidate-controlled committees, the court's ruling upholding section 84305's constitutionality as to candidates and the committees they control necessarily determined plaintiffs' lack of entitlement to an injunction restraining the FPPC from collecting the fines.

Finally, the superior court's ruling disposed of plaintiffs' fourth cause of action, which sought to enjoin the FPPC from enforcing the statute in the future against plaintiffs and others. The court's ruling limited the statute's scope by construing the statute to apply only to candidates and candidate-controlled committees, thereby curing any facial defect in the statute and leaving no unconstitutional application of the statute to enjoin. (See *Broadrick v. Oklahoma* (1973) 413 U.S. 601, 613 [93 S.Ct. 2908, 2916-2917, 37 L.Ed.2d 830]; *Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821-822, 825-826 [258 Cal.Rptr. 161, 771 P.2d 1247].)

Thereafter, in affirming the superior court's ruling, the Court of Appeal necessarily affirmed the superior court's disposition of all causes of action between the parties. Although, in reviewing the Court of Appeal's decision, we chose not to reach the question of the constitutionality of the statute with regard to individuals or committees *other than* candidates and candidate-controlled committees (see Cal. Rules of Court, rule 29.2(a) [on "review of the decision of a Court of Appeal, the Supreme Court may review and decide any or all issues in the cause"]), we did not disturb the Court of Appeal's unqualified affirmance of the trial court's ruling upholding the constitutionality of section 84305 as to candidates and the committees they control. (*Griset I, supra,* 8 Cal.4th at p. 855.)

In summary, because the superior court's ruling reviewed in *Griset I, supra,* 8 Cal.4th 851, disposed of all causes of action framed by the pleadings, leaving no substantive issue for future determination, it was an appealable judgment. ■ When, as here, a trial court's order from which an appeal has been taken disposes of the entire action, the order "may be amended so as to convert it into a judgment encompassing actual determinations of all remaining issues by the trial court or, if determinable as a matter of law, by the appellate court, and the notice of appeal may then be treated as a premature but valid appeal from the judgment." (*Morehart, supra,* 7 Cal.4th at p. 740; accord, *Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493, fn. 3 [220 Cal.Rptr. 818, 709 P.2d 837]; *Gonzalez v. County of Tulare* (1998) 65 Cal.App.4th 777, 782, fn. 4 [76 Cal.Rptr.2d 707].) ■ In the particular circumstances of this case, it is clear that the Court of Appeal in its decision on plaintiffs' first appeal, which we later reviewed in *Griset I, supra,* 8 Cal.4th 851, implicitly construed as a final judgment the superior court's 1991 order denying plaintiffs' motion for a peremptory writ of mandate. (See *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 154 [133 Cal.Rptr. 10, 554 P.2d 330] [trial court's failure through inadvertence or mistake to formally enter judgment does not preclude Court of Appeal from correcting such an error and hearing the appeal].)

Our decision in *Griset I, supra,* 8 Cal.4th 851, became final on December 29, 1995. Thereafter, did the superior court and the Court of Appeal have the

authority to reexamine the constitutionality of section 84305? We explore this question in the part below.

## III. Jurisdiction of Superior Court and Court of Appeal

A reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.) ▇ The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned. "The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void.' " (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 656 [242 P.2d 1]; see Code Civ. Proc., § 43; *Puritan Leasing Co. v. Superior Court* (1977) 76 Cal.App.3d 140, 147 [142 Cal.Rptr. 676] [trial court jurisdiction after reversal with directions limited to terms defined by remittitur].)

▇ In *Griset I, supra,* 8 Cal.4th at page 867, we affirmed without directions the judgment of the Court of Appeal, which in turn had rendered an unqualified affirmance of the superior court's judgment. An unqualified affirmance "ordinarily sustains the judgment and ends the litigation." (9 Witkin, Cal. Procedure, *supra,* Appeal, § 742, p. 772.) Once our decision in *Griset I* became final, the superior court did not have jurisdiction to reopen or retry the case, which the court purported to do when it allowed plaintiffs in 1995 to "renew[]" their 1991 motions for summary adjudication and summary judgment. Therefore, the superior court's later judgment was void insofar as it encompassed or rested upon a redetermination of the merits of the litigation.

▇ When, as here, there is an appeal from a void judgment, the reviewing court's jurisdiction is limited to reversing the trial court's void acts. (See 2 Witkin, Cal. Procedure (4th ed. 1996) Jurisdiction, § 20, p. 566; 9 Witkin, Cal. Procedure, *supra,* Appeal, § 19, p. 80.) ▇ In an attempt to reexamine our decision in *Griset I, supra,* 8 Cal.4th 851, the Court of Appeal majority relied on the "intervening change in controlling law" exception to the doctrine of law of the case, as well as on a similar exception to the doctrines of res judicata and collateral estoppel. In a nutshell: The doctrine of law of the case applies to later proceedings in the same case. (*People v. Stanley, supra,* 10 Cal.4th at p. 786.) The doctrines of res judicata and collateral estoppel apply to later litigation to give conclusive effect to a

former judgment or an issue determined in a former proceeding. (7 Witkin, Cal. Procedure, *supra*, Judgment, §§ 280, 354, pp. 820, 915.)

Our decision in *Griset I,* once it became final, terminated this litigation as to all causes of action in plaintiffs' complaint. Because plaintiffs thereafter did not commence a separate lawsuit, but instead improperly sought to revive this litigation after its final conclusion, there was no pending legal proceeding to which the above mentioned doctrines or their exceptions properly could be applied. And because *Griset I* resulted in affirmance of the trial court's final judgment in this proceeding, the Court of Appeal erred in holding that it had authority to entertain a second appeal in the same action concerning the merits of plaintiffs' causes of action.

## DISPOSITION

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to reverse as void the superior court's judgment entered on December 20, 1995.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.