[No. A098147. First Dist., Div. One. Jan. 16, 2003.]

KINSMITH FINANCIAL CORPORATION, Plaintiff and Respondent, v. J. ROBERT GILROY, Defendant and Appellant.

COUNSEL

Grant, Genovese & Baratta, David C. Grant and Catherine Convy for Defendant and Appellant.

O'Melveny & Myers, Ralph J. Shapira and Ann C. Kim for Plaintiff and Respondent.

OPINION

MARCHIANO, P. J.—Defendant J. Robert Gilroy, a judgment debtor, claims that a 1992 deficiency judgment is unenforceable because more than 10 years passed since issuance of the original foreclosure decree. Gilroy contends that the time for renewing the judgment ran from the date of the foreclosure decree and not from the entry of the deficiency judgment. But the one action rule of Code of Civil Procedure section 726 and the procedure for renewal of judgments in sections 683.110 to 683.220, as applied to this case, allow renewal of the deficiency judgment.[1] We reject Gilroy's argument because it is unsupported by case law or the language of the applicable statutes and affirm the orders in these consolidated cases.

BACKGROUND

In 1983, a partnership of which Gilroy was a general partner borrowed $3.23 million from plaintiff Kinsmith Financial Corporation to purchase land and construct a 42-unit condominium project in Lake County. The loan was secured by a deed of trust and security agreement and by Gilroy's personal guaranty agreement. On March 1, 1985, Kinsmith declared the loan in default.

On July 6, 1989, Kinsmith filed a complaint for judicial foreclosure and other causes of action in Lake County. On July 5, 1991, the court entered a foreclosure decree, entitled "Judgment of Foreclosure and Order of Sale." That decree determined the amount owed, ordered sale of the real property, directed payment of the net proceeds to Kinsmith, determined that Gilroy was personally liable for repayment and retained jurisdiction for purposes of determining the deficiency, if any, after the proceeds of the sale were applied to the debt. The property was sold on February 24, 1992, for net proceeds of $2,000,800.

On March 25, 1992, Kinsmith filed a timely motion for a deficiency judgment. The accompanying memorandum showed an additional

---

[1] All statutory references are to the Code of Civil Procedure.

$3,016,728.31 plus interest still owing. After the parties agreed to stipulate to the fair market value of the condominium units sold at foreclosure, the debtors did not oppose the motion. The deficiency judgment was entered on May 7, 1992.

Time passed. The debt remained. Validating the Benjamin Franklin proverb that creditors have better memories than debtors, in December of 2000, Kinsmith filed an abstract of the May 7 deficiency judgment and an application for an order of examination of Gilroy in Orange County Superior Court. At that time, Gilroy was living in Newport Beach. Gilroy appeared for examination on January 18, 2001. On January 23, 2001, the Orange County court filed an order for delivery of property, ordering Gilroy to turn over $7,000 in cash, 1,400 shares of the stock of Vicinity Corporation valued at $4,000, approximately $4,000 in a bank account and a wine collection consisting of 500 to 600 bottles valued at $20,000, all to be applied towards the Lake County debt.

On February 15, 2001, the parties stipulated to extend the time for compliance to May 15 and modify the order by adding a country club membership, an antique wall clock, an antique armoire, an antique china cabinet and a Lexus automobile. Gilroy agreed to provide an updated financial statement and additional information regarding his assets.

Between May 9 and August 30, 2001, the parties agreed to four more extensions of time while settlement negotiations continued. One extension was due to Gilroy's threatened bankruptcy in the absence of an extension and another was to allow Gilroy's new counsel to review the history of the negotiations.

On September 27, 2001, Kinsmith renewed its May 7, 1992 deficiency judgment in Lake County. (§ 683.130.) Including accrued interest, the total judgment as of August 7, 2001, was $5,804,502.

On December 5, 2001, Gilroy's new counsel moved for an order staying enforcement of the turnover order and moved to quash the turnover order and the 1992 deficiency judgment based on the argument that the only final judgment in the matter was the original 1991 foreclosure decree, which was over 10 years old and had not been renewed.

On December 6, 2001, the Orange County court entered a minute order denying the motion to quash. Gilroy filed a notice of appeal from that order.

On January 8, 2002, Gilroy filed a motion to vacate the renewal of the deficiency judgment in Lake County Superior Court based on the same

arguments asserted in the Orange County matter. On February 25, 2002, the Lake County court denied the motion. Gilroy filed a timely notice of appeal.

The Orange County and Lake County appeals were transferred to this district. We granted consolidation for purposes of briefing, oral argument and decision.

## DISCUSSION

Section 683.110, subdivision (a) provides: "The period of enforceability of a money judgment or a judgment for possession or sale of property may be extended by renewal of the judgment as provided in this article." Gilroy argues that because Kinsmith failed to renew the July 5, 1991 foreclosure decree, all subsequent proceedings, including the deficiency judgment, are no longer enforceable.

To support this contention, Gilroy combines the rules from cases discussing three different subjects to construct an argument that a creditor must renew a satisfied foreclosure decree in order to enforce a subsequent deficiency judgment. He first asserts that the one final judgment rule allows appeal only from one judgment in an action. He then explains that section 726 allows only one action to enforce a debt secured by real property. He cites cases holding that foreclosure decrees are appealable, and from these principles concludes that a deficiency judgment in a section 726 action merely carries out the terms of the foreclosure decree and is not a renewable judgment.

As we explain below, Gilroy's argument fails to consider the existence of exceptions to the one final judgment rule, statutory language that envisions two separate decisions in a foreclosure action, and the fact that a key case supporting Gilroy's argument is based on discredited authority. Moreover, none of the cited authorities require a judgment creditor to renew a foreclosure decree satisfied long ago in order to obtain enforcement of a subsequent deficiency judgment.

*The One Final Judgment Rule Has No Bearing on Renewal of Judgments*

Gilroy cites *Citicorp Real Estate, Inc. v. Smith* (9th Cir. 1998) 155 F.3d 1097 (*Citicorp*) and *United California Bank v. Tijerina* (1972) 25 Cal.App.3d 963 [102 Cal.Rptr. 234] (*United California Bank*) to explain that there can be only one final judgment in an action and that final judgment in this case is

the foreclosure decree.[2] █ The one final judgment rule is a "principle of appellate practice that prohibits review of intermediate rulings by appeal until final resolution of the case." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 697 [107 Cal.Rptr.2d 149, 23 P.3d 43].) Gilroy's discussion ignores the exceptions to the one final judgment rule and its application to the statutory structure of judicial foreclosure actions. Gilroy's cases discussing the rule do not aid in resolution of this issue, as we now explain.

The *Citicorp* case determined that a party could appeal from a foreclosure judgment under federal law, if the determination is sufficiently final and establishes the rights of the parties. (*Citicorp, supra,* 155 F.3d at p. 1101.) The *Citicorp* court also noted that similar judgments that failed to specify the amount due or identify the property to be sold would not be final and appealable. *Citicorp* merely states the general rule requiring finality for purposes of appeal and does not look under the patina.

*United California Bank, supra,* 25 Cal.App.3d 963 involved an appeal from a deficiency judgment in which the debtor had not appealed the foreclosure judgment. (*Id.* at p. 965.) The debtor argued that the creditor had failed to exhaust the security and was consequently barred from obtaining a deficiency judgment. The court explained that foreclosure is a two-part proceeding in which all issues regarding the sale, the amount of the debt, whether the debtor is liable for a deficiency if any, are adjudicated in the first proceeding, culminating in an appealable foreclosure decree. (*Id.* at p. 968.) The court held that the debtor's failure to address the issue of exhaustion of additional security during the foreclosure proceedings waived the argument. (*Id.* at p. 969.)

Rather than supporting Gilroy's argument, *United California Bank* indicates that the foreclosure decree and the deficiency judgment are separate, distinguishable parts of a two-part proceeding. Although the foreclosure decree may be appealable, that fact has no bearing on the nature of the deficiency judgment.

Additionally, Gilroy's insistence on the rigidity of the one final judgment rule of appeal is mistaken. █ The one final judgment rule, like most rules, has exceptions. As noted by Professor Witkin: "A number of statutes expressly provide for interlocutory judgments or decrees. While the statutes

---

[2]Gilroy's citation of *Eldridge v. Burns* (1978) 76 Cal.App.3d 396, 404 [142 Cal.Rptr. 845], adds nothing to the argument. That case merely noted that the fact that a judgment is labeled "interlocutory" does not determine its appealability. No determination in this case was so labeled.

differ in nature and purpose, two features are common and distinguish the decrees from the ordinary interlocutory decree in equitable actions [citation]: they are usually appealable, and they are not subject to later modification by the trial court." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 21, p. 557.) The statutory scheme for foreclosures, coupled with the cases finding foreclosure decrees final and appealable, indicate that this case may fit within the exception allowing appeals of determinations that are essentially interlocutory. But that possibility sheds no light on a creditor's ability to renew a deficiency judgment.

Resolution of the issue of whether or not the foreclosure determination was a final appealable judgment has no bearing on the question of whether it must also be renewed in order to enforce the subsequent deficiency judgment.[3] We must look to the language of section 726 for clarification of the issue raised in this case.

### The One Action Rule Does Not Mandate Renewal of a Satisfied Foreclosure Decree

Gilroy argues that the one final judgment rule, when coupled with the one action rule of section 726, relegates the deficiency judgment to the status of a supplemental enforcement order. Like the one final judgment rule, the one action rule does not address the finality, appealability or renewability of either the foreclosure decree or the deficiency judgment.

Section 726 sets out the one action rule as well as the security first rule. Our Supreme Court described the operation of section 726 as follows: "A secured creditor can bring only one lawsuit to enforce its security interest and collect its debt. Moreover, section 726(a) is part of a broader statutory scheme designed to protect debtors. 'Under California law "the creditor must rely upon his security before enforcing the debt." ' " (*Security Pacific National Bank v. Wozab* (1990) 51 Cal.3d 991, 997 [275 Cal.Rptr. 201, 800 P.2d 557].) The purpose of the one action rule is to protect debtors from multiple collection actions, not to bar entry of more than one final determination in a foreclosure action.[4] (*Shin v. Superior Court* (1994) 26 Cal.App.4th 542, 549 [31 Cal.Rptr.2d 587] [purpose of rule is prevention of

---

[3]Even in cases where the trial court has labeled the foreclosure decree as interlocutory, courts have allowed appeals of the severable final judgment because it is a final determination of the debtor's property rights. (See, e.g., *Stockton v. Rattner* (1972) 22 Cal.App.3d 965, 968 [99 Cal.Rptr. 787]; *Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 364-365 [82 Cal.Rptr. 557].)

[4]Section 726, subdivision (a) provides: "There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter. In the action the court may, by its judgment, direct the sale of the encumbered real

multiple suits]; Bernhardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 3d ed. 2002) § 4.8, p. 236.)

Contrary to Gilroy's argument about the one action rule, if section 726 is viewed as establishing that only one of the statutory determinations is the sole final judgment, the language of the statute indicates it would be the deficiency decision that is the final judgment and the foreclosure determination the intermediate order. (See, e.g., *Ewing v. Richvale Land Co.* (1917) 176 Cal. 152 [167 P. 876] [deficiency judgment derives judicial force from foreclosure decree but is separate and distinct judgment].)

Subdivision (b) of section 726 refers to the foreclosure determination as a decree. "The *decree for the foreclosure* of a mortgage or deed of trust secured by real property or estate for years therein shall declare the amount of the indebtedness or right so secured and, unless judgment for any deficiency there may be between the sale price and the amount due with costs is waived by the judgment creditor or a deficiency judgment is prohibited by Section 580b, shall determine the personal liability of any defendant for the payment of the debt secured by the mortgage or deed of trust and shall name the defendants against whom a deficiency judgment may be ordered following the proceedings prescribed in this section." (Italics added.)[5]

Subdivision (b) refers to the subsequent deficiency determination as a judgment: "the court shall render a *money judgment* against the defendant or defendants for the amount by which the amount of the indebtedness with interest and costs of levy and sale and of action exceeds the fair value of the real property or estate for years therein sold as of the date of sale." (Italics added.)

The differing statutory terminology for the foreclosure decree and the deficiency judgment suggests that the Legislature contemplated an initial determination directing the sale and ascertaining the rights of the parties, and, if a deficiency remained after that decree had been satisfied, a subsequent money judgment to conclude the action. The structure of the judicial foreclosure statute also implies that there is seldom a reason to renew the foreclosure decree when there is a deficiency, because the foreclosure decree will have been essentially satisfied by the time of a deficiency hearing. The statutory language indicates that the Legislature viewed the deficiency determination as a final judgment, contrary to Gilroy's contention.

---

property . . . and the application of the proceeds of the sale to the payment of the costs of court, the expenses of levy and sale, and the amount due plaintiff, . . ."

[5]Subdivision (a) of section 726 refers generally to the court's "judgment" in a foreclosure action, but appears to be a general reference to the determination of the entire action.

*The Deficiency Judgment Is Not Merely an Order Carrying Out the
Foreclosure Decree*

Gilroy also contends that the sole issue determined in a deficiency pro-
ceeding is the arithmetical calculation of the amount due after the foreclo-
sure sale. This statement is not accurate. Under the current procedure for
obtaining a deficiency judgment after a judicial foreclosure sale, an eviden-
tiary hearing must be held by the court to determine the fair value of the
property, regardless of the price paid at the foreclosure sale. That hearing
results, not in the ministerial entry of a number, but in a judicial action: "the
court shall render a money judgment against the defendant . . . ." (§ 726;
see, e.g., Bernhardt, Cal. Mortgage and Deed of Trust Practice, *supra,*
§§ 3.80-3.83, pp. 184-187 [describing procedure leading to entry of defi-
ciency judgment].)

Gilroy cites *Grable v. Damar Production Co.* (1965) 232 Cal.App.2d 510
[43 Cal.Rptr. 16] and *Guaranty Trust etc. Bk. v. Los Angeles* (1921) 186 Cal.
110 [199 P. 35] (*Guaranty Trust*) as support for his contention. Both cases
are distinguishable. *Grable* involved a foreclosure judgment that was fol-
lowed by a "supplemental judgment" that determined various credits for the
debtor's operating expenses for the property during the proceedings chal-
lenging the city's use of the bond proceeds. (*Grable, supra,* at p. 511.) The
court held that the foreclosure decree was appealable and could not be
reviewed on appeal from the later supplemental judgment.

█ *Grable* relied on the reasoning in *Zappettini v. Buckles* (1914) 167
Cal. 27 [138 P. 696], holding that computation of debts and sums due
following an order for a partnership dissolution and accounting does not
involve a judicial act, and is merely a supplemental order after judgment.
*Zappettini* has essentially been overruled, or at least is now considered a
minority position. (See *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959,
965-966 [231 Cal.Rptr. 241] [citing *Middleton v. Finney* (1931) 214 Cal. 523
[6 P.2d 938, 78 A.L.R. 1104] and other cases contradicting *Zappettini*]; see
also *Hollar v. Saline Products, Inc.* (1935) 3 Cal.2d 80, 82 [43 P.2d 273]
[recognizing that *Zappettini* was modified by later authority].) The majority
position is that a judgment ordering dissolution of a partnership and sale of
its assets that does not determine the manner in which expenses are assessed
is not final. (*Kinoshita, supra,* 186 Cal.App.3d at pp. 965-966; 7 Witkin,
*supra,* Judgment, §§ 14-15, pp. 550-553 [noting that most decisions do not
follow the *Zappettini* reasoning].) Aside from the questionable reliability of
Gilroy's authority, the reasoning in *Grable* has no application to the renewal
of judgments.

█ Gilroy's reliance on *Guaranty Trust, supra,* 186 Cal. 110 is also
misplaced. Gilroy contends that the Supreme Court in *Guaranty Trust* de-
cided a similar issue to the one raised by this appeal. However, *Guaranty*

*Trust* arose from very different facts. That case concerned a judgment in favor of bondholders of a city tunnel project that was declared void by the court. One issue in the case was which of six different decrees was a final appealable judgment. (*Id.* at p. 112.) The court held that the decree that resolved all issues between all proper parties and disposed of all controverted matters was the final judgment. (*Id.* at p. 117.) The subsequent order in that case, described as a "modified supplemental decree," merely entered payment of a specified sum that the parties had agreed to accept to allow the city an option to retain the property at issue. The court described the latter order as: "nothing more than an order of the court after judgment, made for the purpose of more effectually carrying out the provisions of the final judgment . . . ." (*Id.* at p. 118.) That description does not apply to a deficiency judgment under the current foreclosure procedure.

Earlier versions of the foreclosure statute provided that if a balance remained due after application of the proceeds of the foreclosure sale, "judgment can then be docketed for such balance against the defendant . . . ." (See Historical Note, 17A West's Ann. Code Civ. Proc. (1980 ed.) foll. § 726, p. 11.) The impact of the different statutory language was acknowledged in *Bowers v. Crary* (1866) 30 Cal. 621, 624, as follows: "The language is not that the Clerk shall enter a judgment for such balance in his judgment book, but it is that he shall enter in his docket the judgment—that is to say, the judgment which has been already entered—for such balance. The distinction is obvious." (See also *Hershey v. Dennis* (1878) 53 Cal. 77, 79 [relying on same statute].)

In 1933, the code was amended to provide that following a hearing, "the court may render a money judgment . . . for the debt." (Historical Note, 17A West's Ann. Code Civ. Proc., *supra,* foll. § 726, p. 12 [language changed to "shall render a money judgment" in 1937].) The statute currently provides that within three months of the foreclosure sale, the creditor may apply for a hearing, where the court takes evidence as to the fair value of the real property, and "the court shall render a money judgment against the defendant . . . ." (§ 726.) Cases interpreting the prior docketing procedure are not necessarily applicable today.

In *Life Savings Bank v. Wilhelm* (2000) 84 Cal.App.4th 174 [100 Cal.Rptr.2d 657] (*Life Savings Bank*), the court considered the characterization of the deficiency judgment in a different context and described the foreclosure and deficiency judgments as the products of separate actions. (*Id.* at pp. 178-179.) The creditor in *Life Savings Bank* missed the three-month filing deadline for requesting a deficiency hearing after the foreclosure sale. (*Id.* at p. 176.) The creditor applied for relief from mistake under section

473, arguing that the three-month period was merely a procedural time limit that could be excused. The court disagreed, and found that the time limit was a statute of limitations and that no relief for mistake was available. (*Life Savings Bank*, at p. 178.)

In reaching its decision that section 726 provides for two actions, the *Life Savings Bank* court relied on cases interpreting section 580a, pertaining to nonjudicial foreclosure sales. The court rejected the argument that the two judgments were parts of a multipart single action, explaining: "Rather than comprising separate 'judgments' to a single action, we hold that, for purposes of the statutes of limitations that apply to them, a judgment for judicial foreclosure, which includes a determination that a party has the right to seek a deficiency, and the deficiency judgment itself are the product of separate actions. Indeed, contrary to Life's argument, a deficiency judgment is not a necessary part of an action for judicial foreclosure. [Citation.] A deficiency judgment need only be sought if the proceeds of the judicial foreclosure are insufficient to cover the secured obligation. Logically then, an action seeking a deficiency is separate from an action seeking the sale of security through judicial foreclosure." (*Life Savings Bank, supra,* 84 Cal.App.4th at pp. 178-179.)

Gilroy attacks the decision in *Life Savings Bank* as aberrant, and distinguishes the section 580a procedure as involving only a deficiency action, because a nonjudicial foreclosure is not an "action" under sections 726 and 22.[6] We need not comment on the *Life Savings Bank* resolution of the statute of limitations issue. For our purposes, it is enough to recognize that the plain language of section 726 provides for two final determinations, one of which is a deficiency judgment.

Whether we view the foreclosure process as two actions or a two-part procedure with two final determinations, we see no support for the argument that the earlier foreclosure judgment must be renewed in order to enforce the subsequent money judgment on the deficiency. Furthermore, the renewal statute requires a party renewing a judgment for the possession or sale of property to "describe the performance remaining due." (§ 683.150, subd. (e).) No performance remained due under the foreclosure decree in this case. The only unsatisfied judgment here, and the only one that Kinsmith sought to enforce, was the money judgment for the deficiency. No purpose is served by also requiring renewal of the already satisfied foreclosure decree.

Because Gilroy's argument is unsupported by case law, statute, or persuasive reasoning, we reject it and affirm the two orders denying his motions to vacate the renewal of the deficiency judgment.

---

[6]Section 22 provides: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

## DISPOSITION

The orders of the Orange County and Lake County courts are affirmed. Kinsmith is entitled to costs on appeal.

Stein, J., and Swager, J., concurred.