[No. A100434. First Dist., Div. Two. Sept. 26, 2003.]

In re NICHOLAS H., a Person Coming Under the Juvenile Court Law.

ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v.
KIMBERLY H., Defendant and Appellant;
THOMAS G., Defendant and Respondent.

Counsel

Janet H. Saalfield, under appointment by the Court of Appeal, for Defendant and Appellant.

Frank H. Free, under appointment by the Court of Appeal, for Defendant and Respondent.

Richard E. Winnie, County Counsel, and Grace Fongmei Tam, Deputy County Counsel, for Plaintiff and Respondent.

Diane A. Bellas, Public Defender, and Joy Ricardo, Assistant Public Defender, for Minor.

Opinion

HAERLE, J.—

## I. INTRODUCTION

The juvenile court dismissed this dependency case and granted physical custody of eight-year-old Nicholas H. to his presumed father, Thomas G. Nicholas's mother, Kimberly H., contends the juvenile court (1) lacked jurisdiction to dismiss this case, (2) applied the wrong test for determining whether Nicholas should be returned to Kimberly's care, and (3) erroneously restrained Kimberly from telling Nicholas that Thomas is not his biological father. We affirm.

## II. STATEMENT OF FACTS AND PROCEDURE

The factual circumstances which led to the filing of this dependency case have been discussed in numerous prior opinions of this court and were also summarized in a published decision by our Supreme Court in *In re Nicholas H.* (2002) 28 Cal.4th 56 [120 Cal.Rptr.2d 146, 46 P.3d 932] (*Nicholas I*). In light of the discrete issues presented in this appeal, we simply note the following salient details. In February 2000, the Fremont Police Department

placed Nicholas in the custody of the Alameda County Social Services Agency (Agency) after Kimberly and Thomas accused each other of misconduct and questioned each other's right to custody of Nicholas. A petition was filed pursuant to Welfare and Institutions Code section 300[1] and Nicholas was temporarily placed with Thomas pending further proceedings to determine Thomas's parental status.

On July 31, 2000, the juvenile court found that Thomas was Nicholas's presumed father under Family Code section 7611. The court adjudged Nicholas a dependent of the juvenile court, found that the home of removal was that of the mother, and placed Nicholas in Thomas's home, under the supervision of the Agency. Kimberly was given reunification services and Thomas was given family maintenance services. By October 2000, Thomas and Nicholas had moved to Southern California to live with Thomas's mother.

A series of juvenile court hearings ensued while, at the same time, Kimberly sought appellate review of several juvenile court orders. Specifically, Kimberly appealed an August 2, 2000, dispositional order (A092188), an October 6, 2000, review order (A093477), a January 8, 2001, review order (A094095) and a series of orders entered by the juvenile court in April and May 2001 during another review proceeding (A095267). The primary issue raised by each of these appeals was whether the juvenile court erred by finding that Thomas was Nicholas's presumed father.

This court consolidated Kimberly's first two appeals (A092188 & A093477) and reversed the juvenile court orders. (*In re Nicholas H.* (Cal.App.).) We concluded that a presumption that Thomas is Nicholas's natural father arose during the juvenile court proceedings, but that presumption was rebutted by clear and convincing evidence that Thomas was not Nicholas's biological father. (*Ibid.*) While our decision in *Nicholas I* was pending in the Supreme Court, we resolved Kimberly's third (A094095) and fourth (A095267) appeals in unpublished decisions we have elsewhere referred to as *Nicholas II* and *Nicholas III*. (*In re Nicholas H.* (Oct. 8, 2001, A094095) [nonpub. opn.] (*Nicholas II*); *In re Nicholas H.* (Mar. 19, 2002, A095267) [nonpub. opn.] (*Nicholas III*).)

Meanwhile, the juvenile court scheduled a hearing date for a combined 12- and 18-month review for November 30, 2001. However, at the hearing, the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

court decided to stay the entire action until May 21, 2002.[2] On May 21, the court extended the stay until August 6, since the Supreme Court had not yet issued an opinion regarding Thomas's status as a presumed father.

On June 6, the Supreme Court filed its opinion in *Nicholas I*. (*Nicholas I, supra*, 28 Cal.4th 56.) The court held that the fact that Thomas was not Nicholas's biological father did not rebut the presumption of natural fatherhood which arose in this case. (*Ibid*.) After the court decided *Nicholas I*, it transferred *Nicholas II* and *Nicholas III* back to us with directions to vacate our prior decisions and to reconsider the matters decided in those opinions in light of *Nicholas I*.

On August 6, the juvenile court scheduled a hearing for the 12- and 18-month review after Kimberly contested the Agency's recommendation that this case be dismissed and custody of Nicholas be awarded to Thomas. Two section 388 petitions that had been filed prior to the stay of the juvenile court proceedings were also scheduled to be heard. In one petition, Thomas sought dismissal of the dependency and full custody of Nicholas. In the other, Kimberly sought to have Nicholas removed from Thomas and to have him placed either with her or in foster care.

The contested juvenile court hearing commenced before the Honorable Winifred Smith on September 5 and continued on September 11. At the conclusion of the hearing, the court terminated reunification services to Kimberly. It found that Kimberly had made progress but was not yet ready to have Nicholas returned to her care. The court further found, by clear and convincing evidence, that it would be in Nicholas's best interest for him to remain with Thomas because of the stability and family relationships he experienced in that placement. The court also found there was clear and convincing evidence that dismissal was warranted and there was no longer a substantial risk of harm to Nicholas that would require dependency status or court supervision. Therefore, the court dismissed the dependency case and gave joint legal custody to both parents and sole physical custody to Thomas. The court also granted Kimberly reasonable visitation and established specific rules and guidelines pertaining to that matter.

The juvenile court's September 11 rulings were memorialized in a series of minute orders, each of which incorporated an attachment setting forth specific guidelines pertaining to visitation. This attachment also contains the following order: "Parents are not to discuss separately with minor any court proceedings and specifically presumed father's status with minor. When it is to be discussed parents are ordered to seek mediation." The court's orders were also incorporated into a final judgment filed on September 20.

---

[2] All further dates noted are in 2002.

On September 24, this court vacated its prior decisions in *Nicholas II* and *Nicholas III*, consolidated those two cases and reconsidered the issues Kimberly had raised therein in light of *Nicholas I*. (*In re Nicholas H*. (Sept. 24, 2002, A094095, A095267) [nonpub. opn.].) For clarity, we refer to our September 24 decision as *Nicholas IV*. Most of the arguments Kimberly advanced in *Nicholas IV* failed in light of the Supreme Court ruling that Thomas was Nicholas's presumed father. We did agree with Kimberly, though, that one restriction in a visitation order was not supported by substantial evidence. However, more than a year had passed since that particular order was made and we emphasized that our finding did not affect or limit, in any way, the juvenile court's discretion to change Kimberly's visitation because of events occurring after the challenged order was issued. (*Nicholas IV, supra*, at pp. 13–14.)

## III.  DISCUSSION

### A.  *Jurisdiction*

Kimberly contends the juvenile court committed reversible error by dismissing this action on September 11, because at that time the court did not have jurisdiction to terminate its jurisdiction over Nicholas. According to Kimberly, the juvenile court lacked jurisdiction because *Nicholas II* and *Nicholas III* were still pending in this court, and therefore the juvenile court could not reopen any matter addressed in those appeals until this court filed its opinion in *Nicholas IV* and transferred jurisdiction back to the lower court by issuing a remittitur, which we did not do until November 25.

Section 916 of the Code of Civil Procedure codifies the general rule that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." Kimberly relies on authority applying this general rule, and she particularly emphasizes language in the case law characterizing the effect of section 916 in jurisdictional terms. (See, e.g., *People v. Johnson* (1992) 3 Cal.4th 1183, 1257 [14 Cal.Rptr.2d 702, 842 P.2d 1] ["during the pendency of an appeal, the trial court loses jurisdiction to do anything in connection with the cause that may affect the judgment, but retains certain powers over the parties and incidental aspects of the cause, such as procedural steps in connection with preparation and correction of the record"]; *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [107 Cal.Rptr.2d 149; 23 P.3d 43] ["[t]he order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned"].)

Kimberly's argument fails because this case falls within an express statutory exception to the general rule set forth in section 916. Code of Civil Procedure section 917.7 states, in part: "The perfecting of an appeal shall not stay proceedings as to those provisions of a judgment or order which award, change, or otherwise affect the custody, including the right of visitation, of a minor child in any civil action, in an action filed under the Juvenile Court Law, or in a special proceeding . . . ." All of the appeals Kimberly filed in this case were from orders that awarded, changed, or otherwise affected custody, including the right of visitation. Therefore, the filing of those appeals did not stay proceedings as to any of the matters embraced in the appealed orders.[3] Since the filing of the appeals had no effect on the juvenile court's jurisdiction at all, it was not restrained from terminating that jurisdiction simply because appeals were still pending.

Our conclusion is supported by *In re Natasha A.* (1996) 42 Cal.App.4th 28 [49 Cal.Rptr.2d 332] (*Natasha A.*), a case which Kimberly erroneously characterizes as inapposite. In that case, Natasha was adjudged a dependent of the juvenile court based on allegations of sexual abuse by her father. (*Id.* at p. 31.) Natasha was placed with her mother, and the father was denied visitation. Father appealed the dispositional orders and a subsequent order denying him visitation. (*Id.* at p. 32.) The Riverside County Department of Public Social Services took the position that that juvenile court could not dismiss the dependency or proceed with review hearings until the father's appeal was resolved. (*Id.* at pp. 32–33.) Ultimately, the juvenile court agreed and ordered the case off calendar pending resolution of the appeal. The *Natasha A.* court held that the juvenile court erred.

The *Natasha A.* court acknowledged the general rule that an appeal stays further proceedings in the trial court regarding matters embraced therein but it recognized, as we have, that the general rule is expressly subject to the statutory exception set forth in Code of Civil Procedure section 917.7. (*Natasha A., supra,* 42 Cal.App.4th at p. 39.) That statutory exception clearly applies to dependency proceedings. As the court explained, "[t]he dispositional order adjudging the minor to be a dependent child of the court necessarily changed and affected legal custody; in this case, it changed and affected visitation as well. All subsequent review hearings would be proceedings 'as to' those provisions of the dispositional order, and hence not stayed." (*Ibid.*) The court also recognized that, to the extent subsequent proceedings pertained to matters not embraced in or affected by the dispositional order at all, the proceeding would not be stayed even under the general rule. (*Id.* at p. 39, fn. 7.)

---

[3] The juvenile court does have *discretion* to stay proceedings while an appeal is pending (Code Civ. Proc., § 917.7) and, in this case, the court exercised that discretion. However, its discretionary stay expired, by its own terms, on August 6.

The *Natasha A.* court also rejected the notion, advanced by the department in that case, that the juvenile court could not terminate jurisdiction while an appeal was pending. The court explained: "We do not mean that the juvenile court was fated to hold a succession of ritualistic review hearings until the appeal was finally decided. . . . Even while the appeal was pending, the juvenile court could have chosen—in its discretion, and subject to all statutory prerequisites—to terminate its jurisdiction. (See [§ 364, subd. (c)].) Moreover, if it did choose to terminate its jurisdiction, it could also have chosen to issue an exit order determining custody and visitation. (§ 362.4; see also Cal. Rules of Court, rule 1457.) Thus, our holding comports with the strong public policy against protracted litigation in dependency cases. [Citations.]" (*Natasha A.*, *supra,* 42 Cal.App.4th at pp. 39–40.)

Kimberly contends that the procedural posture of the present case distinguishes it from *Natasha A.*, *supra,* 42 Cal.App.4th 28. Although her argument is confusing, Kimberly focuses on the fact that this court rendered decisions in *Nicholas II* and *Nicholas III* that were favorable to her. She appears to argue that those decisions, although ordered vacated by the Supreme Court, showed that this court intended to impose directions in its remittitur that would limit the juvenile court's jurisdiction upon remand and, therefore, the juvenile court had to await those directions before it could completely dispose of its jurisdiction over this case.

This premise is simply incorrect. As we noted above, the primary issue presented in *Nicholas II* and *Nicholas III* was whether the juvenile court's finding that Thomas was Nicholas's presumed father was erroneous. Since we had already concluded that finding was erroneous in *Nicholas I*, we were compelled to reverse the orders appealed in *Nicholas II* and *Nicholas III.* However, we reject, as a matter of fact, the contention that this court's analysis of secondary or related issues raised in *Nicholas II* or *Nicholas III* suggested that we intended to impose directions on remand that would in any way limit the juvenile court's jurisdiction over this case. Furthermore, the relevant fact is that by the time the juvenile court dismissed this dependency proceeding, the Supreme Court had decided *Nicholas I, supra,* 28 Cal.4th 56, and the primary issue raised by *all* of Kimberly's appeals was finally decided against her.

In any event, the complicated procedural history of this case is simply not relevant to the distinctly legal question of whether section 916 applies to dependency proceedings. Like the *Natasha A.* court, we conclude that the general rule does not apply because a juvenile court order affecting a matter set forth in Code of Civil Procedure section 917.7 is not stayed by the filing of an appeal. Since Kimberly's appeals did not stay the juvenile court proceedings, the fact that appeals were pending did not limit the juvenile court's jurisdiction nor prevent it from dismissing the dependency case.

B. *The Custody Determination*

1. *Issues presented*

Kimberly contends the juvenile court applied the wrong standard when it made the decision to grant Thomas sole physical custody of Nicholas. According to Kimberly, because this determination was made at a combined 12- and 18-month review held pursuant to sections 366.21 and 366.22, the juvenile court was required to return Nicholas to her care unless it found that to do so would create a substantial risk of detriment to Nicholas's safety, protection, or physical or emotional well-being. (See §§ 366.21, subd. (f) (section 366.21(f)) and 366.22, subd. (a) (section 366.22(a).) The Agency and Thomas (respondents) contend that the juvenile court was not required to conduct a risk of detriment assessment in this case because review hearings were conducted pursuant to section 364, not section 366. Alternatively, respondents contend that, even if section 366 does apply to this case, the court was compelled to award custody of Nicholas to Thomas once it determined that Agency supervision of the placement with Thomas was no longer necessary (citing § 366.21, subd. (e)). No party has cited a case that is directly on point.

To resolve the issues raised by the parties, we must first determine which statutory provisions governed the review proceedings in this case. We then consider the role that the "risk of detriment" and "need for supervision" inquiries play in a custody determination like the one that was made in this case.

2. *Governing statutory provisions*

As noted in our factual summary, the juvenile court removed Nicholas from the custody of his mother, Kimberly, placed him in the care of his presumed father, Thomas, subject to Agency supervision, and ordered that services be provided to both parents. That placement decision was made pursuant to section 361.2, which provides in relevant part: "(a) When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.

"(b) If the court places the child with that parent it may do either of the following:

"(1) Order that the parent become legal and physical custodian of the child. The court may also provide reasonable visitation by the noncustodial parent. The court shall then terminate its jurisdiction over the child. The custody order shall continue unless modified by a subsequent order of the superior court. The order of the juvenile court shall be filed in any domestic relation proceeding between the parents.

"(2) Order that the parent assume custody subject to the supervision of the juvenile court. In that case the court may order that reunification services be provided to the parent or guardian from whom the child is being removed, or the court may order that services be provided solely to the parent who is assuming physical custody in order to allow that parent to retain later custody without court supervision, or that services be provided to both parents, in which case the court shall determine, at review hearings held pursuant to Section 366, which parent, if either, shall have custody of the child."

Kimberly maintains that, since the placement with Thomas was subject to Agency supervision and services were provided to both parents, section 361.2, subdivision (b)(2) (section 361.2(b)(2)) effectively directed the court to conduct review hearings pursuant to section 366 et seq.

Section 366 requires that the "status of every dependent child *in foster care* shall be reviewed . . . no less frequently than once every six months." (§ 366, subd. (a), italics added.) That section also identifies specific issues to be considered at review hearings, including, for example, the safety of the child, the continuing necessity for and appropriateness of the placement, the extent of the agency's efforts to return the child to a safe home, and the progress that has been made toward alleviating the causes requiring the placement in foster care. (*Ibid.*) Additional guidelines pertaining to specific review hearings (i.e., the 6-, 12-, and 18-month reviews) are set forth in subsections of section 366.

Respondents contend that section 366 et seq. applies only in cases in which the dependent child is placed in foster care. They maintain that the procedure described in section 364 governs hearings in cases in which the dependent child has been placed with a parent.

Section 364, subdivision (a) states: "Every hearing in which an order is made placing a child under the supervision of the juvenile court pursuant to section 300 and in which the child is not removed from the physical custody of his or her parent or guardian shall be continued to a specific future date not to exceed six months after the date of the original dispositional hearing." subdivision (c) of section 364 further provides that, at each review hearing, the court "shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker . . . establishes by

a preponderance of evidence that the conditions still exist [that] would justify initial assumption of jurisdiction under section 300, or that those conditions are likely to exist if supervision is withdrawn."

The review hearings in the present case were not held pursuant to or governed by section 364. Section 364 applies to review hearings held after "an order is made placing a child under the supervision of the juvenile court pursuant to Section 300 and in which the child *is not removed from* the physical custody of his or her parent or guardian." (Italics added.) In the present case, Nicholas *was* removed from the physical custody of his parent, i.e., Kimberly. The juvenile court made an express finding that Kimberly was the custodial parent and it removed Nicholas from her care. Under these circumstances, section 364 does not apply. (See *In re Sarah M.* (1991) 233 Cal.App.3d 1486, 1493–1494 [285 Cal.Rptr. 374], disapproved on other grounds in *In re Chantal S.* (1996) 13 Cal.4th 196, 204 [51 Cal.Rptr.2d 866, 913 P.2d 1075] (*Chantal S.*).)

Respondents mistakenly rely on *In re N. S.* (2002) 97 Cal.App.4th 167 [118 Cal.Rptr.2d 259], a case that did not involve a section 361.2 placement with a noncustodial parent. *In re N. S.* involved a placement accomplished by acts in excess of the juvenile court's jurisdiction, which did not occur in this case. We need not confound our analysis by exploring the facts of *In re N. S.* Instead, we simply note that the *In re N. S.* court held that section 364 applies to "review hearings for a minor who has been removed from, but is subsequently placed back in, parental custody." (*In re N. S.*, at p. 172.) That simply did not happen here.

Respondents are correct that section 366 et seq. sets forth the procedure for conducting review hearings in the context of a dependency case in which the child has been placed in foster care. However, they improperly ignore the express statutory directive in section 361.2(b)(2) that, when a dependent child is placed with a previously noncustodial parent and both parents are afforded services, review hearings are to be held pursuant to section 366. In light of that directive, we agree with Kimberly that review proceedings in this case were conducted pursuant to section 366 et seq. (See § 361.2(b)(2).) However, we do not share her view of the consequences of that fact. Kimberly takes the position that, since hearings were conducted pursuant to section 366, the juvenile court was compelled to strictly adhere to the procedures set forth in every provision of the Welfare and Institutions Code that begins with section 366.

■ By directing that review hearings be held pursuant to section 366, section 361.2(b)(2) advances the Legislature's goal of ensuring that dependent children receive meaningful and expeditious periodic review of their

cases designed to achieve permanency and stability. The framework for periodic review established by section 366 et seq. establishes that goal but, by its terms, directly applies only to dependent children *in foster care.* Thus, section 361.2(b)(2) simply ensures that dependent children who have been placed with a previously noncustodial parent rather than in foster care also receive meaningful and expeditious periodic review of their cases. However, nothing in this statutory provision or any other we have found supports Kimberly's view that the procedure set forth in section 366 et seq. must be rigidly applied and followed verbatim when the status review is of a child who has not been placed in foster care. In fact, since the section 366 procedure is tailored to address the dependent child in foster care, strict application of that procedure to a child living with a parent would not be possible.

A parent placement poses very different considerations for the juvenile court than does a foster care placement, and those considerations must govern any reasonable interpretation of section 366 et seq. as it applies to dependent children who have been placed with a previously noncustodial parent. With this fact in mind, we turn to the specific statutory provisions upon which Kimberly relies in this case.

### 3. *Standards governing the custody determination*

Kimberly argues that, since the September 2002 hearing was a 12- and 18-month review hearing,[4] the juvenile court was required by sections 366.21(f) and 366.22(a) to return Nicholas to her custody unless it found that returning Nicholas to her would create a substantial risk of detriment to his safety or well-being.

Section 366.21(f) states that a "permanency hearing" shall be held no later than 12 months after the date a dependent child enters foster care. It further

---

[4] Kimberly's characterization of the September 2002 hearing is not completely accurate. Although the hearing was a combined 12- and 18-month review, it was also a hearing on two pending section 388 petitions, both of which sought dismissal of the dependency case. Section 388 authorizes a parent to petition the court for a hearing to terminate the jurisdiction of the court because of a change of circumstance or new evidence. (§ 388, subd. (a).) Section 388 further provides that "[i]f it appears that the best interests of the child may be promoted" by the termination of jurisdiction, the court shall schedule a hearing on the petition and give proper notice to the affected parties. (§ 388, subd. (c).) Furthermore, since the juvenile court has broad discretion to make custody orders when it terminates jurisdiction in a dependency case (§ 362.4), we think it is important to acknowledge that the juvenile court could have terminated jurisdiction and made a custody determination without conducting any review hearing at all.

In any event, since the September 2002 hearing was a review hearing, this case does raise the question of how the risk-of-detriment inquiry should be applied in a case in which the dependent child has been placed with a parent pursuant to section 361.2 and services have been extended to both parents pursuant to section 361.2(b)(2).

states that, at the permanency hearing, "[t]he court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." If the child is not returned to a parent and the permanency hearing is continued, a "permanency review hearing" must be held within 18 months after the date the dependent child was originally removed from the physical custody of his or her parent or legal guardian. (§ 366.21, subd. (g)(1).)

Section 366.22(a) states that, at the permanency review hearing, "[t]he court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."

Kimberly interprets these sections as requiring the juvenile court to return custody of Nicholas to her unless it found that to do so would pose a substantial risk of detriment to Nicholas's physical or emotional well-being. She reasons that the statutory language quoted above expressly contemplates *returning* the child to a parent and, since she was the custodial parent when dependency was established, and Nicholas was removed from her care, she is the only parent to whom he could be returned. We disagree.

■ The risk of detriment analysis incorporated into sections 366.21(f) and 366.22(a) expressly pertains to a review hearing in the case of a dependent child *in foster care*. In that situation, these provisions (as well as § 366.21, subd. (e)), which pertains to the six-month review hearing) indicate that the dispositive question is whether the dependent child can be removed from foster care and returned to the parent. Sections 366.21(f) and 366.22(a) require the juvenile court to remove the dependent child from the foster care placement and return him or her to the physical custody of a parent or guardian unless it finds that returning the child would create a substantial risk of detriment to the child's health, safety, or well-being.

■ However, when a dependent child has been placed with a previously noncustodial parent and both parents have been provided services, several considerations preclude applying the risk of detriment analysis in the same way it applies in a foster care case. First, in a case like this one, the child has already been placed with *a parent*. Second, the determination has already been made, pursuant to section 361.2, subdivision (a), that a supervised placement with that parent would not be "detrimental to the safety, protection, or physical or emotional well-being of the child." And third, by extending

services to both parents, the court has necessarily identified two distinct potential parental homes for this child, the home of removal and the home of the previously noncustodial parent.

Thus, in this context, a finding that a dependent child can safely be returned to the home of the parent from whose custody the child was originally removed simply does not have the dispositive effect that finding has when the dependent child has been living in foster care. Such a finding does establish that the home of removal is now a safe home. But it does not address which parent, if either, should have custody of the child. In order to answer that question in this type of case, the court would still have to make at least two additional inquiries.

First, the court would have to determine whether the previously noncustodial parent is now ready to assume custody without supervision. Section 366.21, subdivision (e) (section 366.21(e)) states in part: "If the child had been placed under court supervision with a previously noncustodial parent pursuant to Section 361.2, the court shall determine whether supervision is still necessary. The court may terminate supervision and transfer permanent custody to that parent, as provided for by paragraph (1) of subdivision (b) of Section 361.2." By its terms, section 366.21(e) pertains to the "review hearing held six months after the initial dispositional hearing." However, the provision we have just quoted has been made applicable to the 12- and 18-month review hearings by virtue of rules 1461(c)(2)(C) and 1462(b)(2)(C) of the California Rules of Court.

■ A finding that supervision of an in-home placement is no longer required is comparable to a finding that a child can safely be returned to the home of removal. In both instances, a finding favorable to the parent signifies that that parent is qualified to receive custody of his or her child.[5]

Once the court has determined whether there are one or two parental homes to which the child can be returned, it must then address the potentially dispositive issue in this type of case. That issue is set forth in section 361.2 itself, which directs that "at review hearings held pursuant to Section 366," the court must determine "which parent, if either, shall have custody of the child." (§ 361.2(b)(2).)

---

[5] We reject respondents' contention that, in the case of a dependent child placed with a previously noncustodial parent, the need for supervision inquiry supplants the risk of detriment inquiry and requires the court to give custody to the previously noncustodial parent once it determines that Agency supervision is no longer necessary. Nothing in the language of section 366.21(e) or any other applicable provision *requires* the juvenile court to award custody to the parent with whom the child has been placed subject to supervision during the proceedings.

■ When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child. (See *Chantal S., supra,* 13 Cal.4th 196, 206; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 712 [17 Cal.Rptr.2d 759]; *In re John W.* (1996) 41 Cal.App.4th 961, 973–974 [48 Cal.Rptr.2d 899]; *In re Roger S.* (1992) 4 Cal.App.4th 25, 30–31 [5 Cal.Rptr.2d 208].) Furthermore, the court is not restrained by "any preferences or presumptions." (*Chantal S.,* at p. 206, quoting *In re Jennifer R.,* at p. 712.) Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons. (*In re John W.,* at p. 974.) By the same token, a finding that the parent from whom custody was removed no longer poses a risk of detriment or that the parent whose custody has been subject to supervision no longer requires supervision is relevant to, but not necessarily determinative of, the best interests of the child.

■ To summarize, we reject Kimberly's interpretation of sections 366.21(f) and 366.22(a) as they applied in this case. At the 12- and 18-month permanency and permanency review hearings in a section 361.2, subdivision (b) case in which both parents have been provided services, a finding that the child can safely be returned to the parent from whom custody was removed does not automatically entitle that parent to custody of the child. Instead, such a finding qualifies the parent to receive custody. As we have explained, the risk of detriment assessment and the need for continuing supervision inquiry are valid and relevant considerations when the juvenile court makes a custody decision in a section 361.2(b)(2) case. However, the court must still decide which parent should receive custody of the child by considering the best interests of the child.

■ In the present case, the juvenile court found that Agency supervision was no longer necessary. Kimberly contends, and we accept for purposes of our analysis, that the court also implicitly found that Nicholas could be returned to her without creating a substantial risk of detriment to his health or well-being. However, as explained above, neither of these findings dictated the outcome of the custody determination. Rather, the court should have based its custody decision on the best interests of Nicholas. And, indeed, that is precisely what it did. It found that continuing the placement with Thomas by granting him sole physical custody of Nicholas was in the best interests of the child because of the stability and family relationships Nicholas experienced in that placement. The court also acknowledged Nicholas's interest in continuing to have a relationship with his mother by granting joint legal custody and providing Kimberly with extensive visitation. Therefore, the court did apply the correct standard when making the custody decision in this case.

## C. *The Order Regarding Paternity*

Kimberly's final contention is that the juvenile court erred by restraining her from discussing these proceedings with Nicholas and specifically by precluding her from telling Nicholas that Thomas is not his biological father. As noted in our factual summary, the court's written order stated: "Parents are not to discuss separately with minor any court proceedings and specifically presumed father's status with minor. When it is to be discussed parents are ordered to seek mediation."

Initially, we find that Kimberly waived her objection to this order by failing to complain in the lower court. The juvenile court made this ruling at the September 2002 hearing after discussing the matter with the parties. Kimberly was present and participated in the discussion. However, neither Kimberly nor her counsel objected to the mediation requirement. Kimberly now contends she was not required to object because the Agency objected that the court lacked authority to make this order. In fact, the Agency did not object. Earlier during the hearing, counsel for the Agency stated that it would not be appropriate for the court to make an order precluding the parents from ever discussing the subject of Nicholas's biological heritage. The order the court entered expressly does not preclude that discussion. Instead the order requires that the subject be discussed with both parents present and with the assistance of a mediator. Neither the Agency nor anyone else objected to this order.

In any event, Kimberly's substantive objection is unsound. Kimberly contends the juvenile court's power to impose restraining orders is expressly limited by section 362.4 and that the order at issue here was not authorized by that statute.

Section 362.4 states that, when the juvenile court terminates jurisdiction over a minor dependent child, and proceedings to alter the marital status of the child's parents or to determine the child's paternity are pending in the superior court, or a custody order has been entered with respect to the child, "the juvenile court on its own motion, may issue a protective order as provided for in Section 213.5 or as defined in Section 6218 of the Family Code, and an order determining the custody of, or visitation with, the child." An order entered pursuant to section 362.4 is commonly referred to as an "exit order." (*In re John W., supra*, 41 Cal.App.4th at p. 970 & fn. 13.) The exit order is filed in any pending superior court action in which the custody of the child is at issue and if no such action is pending, the exit order can be used to open a file in the superior court of the county of residence of the parent who has been given custody of the child. (§ 362.4.) That order "shall continue until modified or terminated by a subsequent order of the superior court." (*Ibid.*)

Kimberly interprets this statute as giving the juvenile court very limited power to restrain conduct that is expressly identified in either section 213.5 or Family Code section 6218, the provisions referenced in section 362.4. She further maintains that neither of these provisions can reasonably be construed as authorizing the court to prevent a parent from discussing her child's paternity with that child. We reject the premise of Kimberly's argument, i.e., that the juvenile court's power to impose protective orders is strictly limited by section 213.5 and Family Code section 6218. Kimberly cites no authority for this proposition, which, in our view, is inconsistent with our Supreme Court's analysis in *Chantal S., supra*, 13 Cal.4th 196.

In *Chantal S.*, the court held that "sections 362.4 and 362[, subdivision] (c) authorize the juvenile court to issue an appropriate protective order conditioning custody or visitation on a parent's participation in a counseling program." The court found that, since section 362.4 expressly authorizes the court to make custody and visitation orders, this section "implicitly authorizes the court to make collateral orders, such as counseling orders, that are reasonably related to the custody and visitation orders." (*Chantal S., supra*, 13 Cal.4th at p. 204.) The court also found that section 362, subdivision (c) gives the juvenile court additional broad authority to issue protective orders. (*Ibid.*) Section 362, subdivision (c) states that "[t]he juvenile court may direct any and all reasonable orders to the parents or guardians of the child who is the subject of any proceedings under this chapter as the court deems necessary and proper to carry out the provisions of this section" and specifically authorizes an order directing a parent to participate in counseling or education programs. The *Chantal S.* court rejected the contention that the broad authority conferred by section 362, subdivision (c) no longer exists once a court determines that jurisdiction should be terminated. Rather, as the court recognized, a determination that continuation of dependency is no longer required could well be premised on a custody and visitation order that contains protections that enable the court to alleviate continuing concerns that might otherwise preclude the court from terminating its jurisdiction. (*Chantal S.*, at p. 204.)

*Chantal S.* confirms that the exit order in this case, requiring these parents to reach a mediated agreement about how Nicholas will be told about his paternity, is not objectionable. The order is proper under section 362.4 because it is a collateral order reasonably related to the court's custody and visitation orders. This order is also proper under section 362, subdivision (c), since these parents' dispute about the nature of Thomas's relationship with Nicholas is the source from which this entire case evolved. That dispute, though resolved for legal purposes, continues to adversely affect these parents' relationship with each other and with Nicholas. Thus, the court could

reasonably have concluded that the mediation requirement is necessary to protect Nicholas from being caught in the crossfire of these parents' ongoing battle.

Indeed, the mediation requirement not only protects Nicholas from future harm, it also promotes "the strong public interest in preventing the juvenile dependency system from being used to subsidize private child custody disputes." (*In re John W., supra*, 41 Cal.App.4th at p. 969.) "The juvenile courts must not become a battleground by which family law war is waged by other means. It is common knowledge that the resources of local government social service agencies are stretched thin; in the juvenile dependency context those resources are manifestly intended to be directed at neglected and genuinely abused children." (*Id.* at p. 975.) The juvenile court's September 2002 rulings, including the order conditioning custody and visitation on participation in mediation, properly moved the parties' ongoing custody dispute from the juvenile court to the family court. To the extent either parent seeks to modify those orders, he or she may go before the superior court. (§ 362.4.)

## IV. DISPOSITION

The judgment is affirmed.

Kline, P. J., and Lambden, J., concurred

Appellant's petition for review by the Supreme Court was denied December 17, 2003.