Filed 8/28/24  P. v. Williams CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096809 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F02827) |
| v. | OPINION ON TRANSFER |
| KEITH WILLIAMS, JR., | |
| Defendant and Appellant. | |

In 2013, defendant Keith Williams, Jr., was convicted of first degree murder with special circumstances of lying in wait and active participation in a street gang, as well as attempted premeditated murder.  In 2021, he filed a petition for resentencing pursuant to Penal Code former section 1170.95, which the trial court summarily denied.  Defendant appealed, arguing that the trial court erred in denying his petition, as he made a prima facie showing that he was entitled to relief, notwithstanding the fact the jury found true two special circumstances associated with the murder charge that required a finding of specific intent to kill as well as a separate finding of premeditation while committing the attempted murder.

1

In an unpublished opinion, we affirmed the denial of the petition as to defendant's murder conviction but reversed as to his attempted murder conviction. Anticipating the decision in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), we concluded that the gang-murder special-circumstance instruction, modified to refer to the aiding and abetting an intentional killing instruction, ensured the jury was properly instructed as to the requisite elements for a valid conviction for murder.

The California Supreme Court subsequently granted review and transferred the matter to us with directions to vacate our opinion and reconsider the cause under *Curiel, supra*, 15 Cal.5th 433.[1] By separate order, we vacated our decision.

In supplemental briefing after transfer, defendant argues that *Curiel* demonstrates the trial court erred in summarily denying his resentencing petition. In so arguing, defendant reiterates many of his original arguments raised in this appeal. In fact, he fails to identify errors in our opinion in light of *Curiel*. As explained below, having reconsidered the matter, we conclude our original opinion is consistent with *Curiel* and we see no need to deviate from our original findings and conclusions. However, we modify our opinion to specifically note the applicability of *Curiel* and to address defendant's argument regarding Assembly Bill No. 333 (2021-2022 Reg. Sess.), raised for the first time upon transfer.

### FACTUAL AND PROCEDURAL BACKGROUND

*A. Factual Background*

The following background is taken from this court's nonpublished opinion in defendant's direct appeal, *People v. Williams* (Sept. 29, 2015, C076196) (*Williams I*):

---

**1** In *Curiel*, the court held that in order to refute allegations in a resentencing petition pursuant to Penal Code section 1170.95 (now renumbered as 1172.6), the defendant's record must conclusively establish every element of the offense, not just intent to kill, under a now-valid theory of liability for murder. (*Curiel, supra*, 15 Cal.5th at p. 463.)

"Around 11:00 p.m. on May 19, 2009, Ja'Ron Franklin was sitting in his front yard with his friend and neighbor, Paul Cousins. Franklin saw two males he did not recognize walking on the other side of the street. The shorter[2] of the two men crossed the street and started firing a gun at them. The man stumbled and dropped the weapon, then picked it up, pointed it at Franklin and Cousins, and asked for their possessions. After Cousins and Franklin replied that he had the wrong people, the man fired into Cousins's chest. Franklin tried to take cover behind a green electrical box, but was shot six times. Franklin survived but Cousins died, also having sustained multiple gunshot wounds. According to Franklin, the taller male fled with the shorter man after the shooting.

"David Rodriguez, who lived nearby, heard gunshots as he was about to go to bed that night. He looked out an upstairs window and heard a couple of men running to a car. He then saw a white Cadillac coupe drive off with its headlights off.

"Marquice Corona shared siblings with Cousins and was very close to him. Cousins told him that he hung out with members of the Gunz street gang. These members were Cousins's friends. About a month before he was killed, Cousins told Corona that he was getting into it with some guys from Starz. Cousins said some people 'want problems with him.' At that time, Gunz was 'beefing' with the StarzUp gang. While he was never a member of the Gunz gang, when Cousins had problems with members of Starz, he would represent himself to be a Gunz guy.

"Kevin Robinson, a member of the Starz gang, contacted law enforcement with information about the case, a conversation he had with Deandre Ellison concerning

---

**2** "Franklin testified that the shorter man was about five feet five inches or five feet six inches tall and the taller one was between 5 feet 11 inches and six feet one inch tall. He admitted that he had told officers at the scene of the shooting that the shooter and the other man were both about 5 feet 10 inches tall. Defendant is 5 feet 10 inches tall."

defendant's involvement in the shooting. Ellison agreed to give information about the shooting in exchange for assistance in a pending case.[3] He told officers that defendant 'got into [it] with some GunzUp dude' and began shooting.[4]

"After conversing with law enforcement, Ellison decided to write a letter to defendant in order to learn more about the shooting. Defendant replied by telling him that 'two people got hit' and that he emptied a nine-millimeter handgun. Law enforcement set up three pretext calls between Ellison and defendant, who was on juvenile probation at the Woodward Academy in Iowa. They also asked Ellison to duplicate from memory the letter he sent to defendant.

"During the first pretext call, defendant told Ellison there were 'two of them' and he 'emptied the whole bag,' a term for using all the bullets. Defendant also said he used a 'nip,' which meant a nine-millimeter handgun. In the second pretext call, defendant claimed responsibility for several other shootings. He also referred to details of the charged shooting, such as seeing two men sitting on the 'little green thing,' a reference to the green electrical box at Franklin's house. Defendant also mentioned a white Cadillac and claimed to have been the shooter. At one point during the second call, Ellison asked defendant, 'And them, them was GDs[5] wasn't they?' Defendant replied: 'Yeah. Cause, cause, cause, I, uh hit him up with it and they, they threw it back at me, so that's how I knew they was one.' According to defendant, 'they said what's up,' and so he 'melted them.' Defendant also took credit for being the shooter in the third pretext call.

---

**3**   "Ellison died before the trial and his preliminary hearing testimony was read to the jury."

**4**   "Ellison had told an officer that defendant said he had 'got into it' with people from 'Gunz down.' Defendant is a member of the Starz street gang."

**5**   "According to Ellison, 'GD' refers to the Gunz Down gang."

4

"Defendant, testifying on his own behalf, said that in 2009 he was 17 years old and a member of the StickUp Starz gang. On the night of the shooting, defendant was at a friend's recording studio with Ellison and some others. Defendant left in a white Cadillac with two men, thinking they were going to a party; he sat in the back seat and was intoxicated. On the way, the men stopped the car and got out, one of them, 'Bama,' started to shoot. All three of them ran away after the shooting. A few days later, defendant called Ellison and told him about the shooting.

"Defendant admitted to the shooting in his correspondence with Ellison because he did not want to appear to be weak within his gang." (*Williams I, supra*, C076196.)

### B. Procedural Background

Defendant's jury was instructed, inter alia, with CALCRIM Nos. 400, 401, 403, 601, 705, 728, and 736, but was not instructed with CALCRIM No. 702.

The jury found defendant guilty of first degree murder and found true the special circumstances of lying in wait and active participation in a criminal street gang (Pen. Code, §§ 187, subd. (a), 190.2, subd. (a)(15) & (a)(22))[6] and attempted premeditated murder (§§ 187, subd. (a), 664). The jury found the allegations that defendant personally used and/or discharged a firearm during the offenses not true. The jury also found the allegation that defendant personally inflicted great bodily injury upon the attempted murder victim to be not true. The trial court sentenced defendant, who was a juvenile when the crimes were committed, to 32 years to life. (*Williams I, supra*, C076196.)

On appeal, a different panel of this court affirmed defendant's convictions. In particular, this court agreed the trial court erred in giving CALCRIM No. 403 on liability for first degree murder under a natural and probable consequences theory because that theory of guilt cannot be used to support a conviction for first degree murder. This court

---

[6] Undesignated statutory references are to the Penal Code.

5

noted that in *People v. Chiu* (2014) 59 Cal.4th 155, "the Supreme Court said the public policy supporting the natural and probable consequences doctrine 'loses its force in the context of a defendant's liability as an aider and abettor of a first degree premeditated murder.' (*Id.* at p. 166.) The [Supreme C]ourt explained that the mental state for first degree murder is uniquely subjective and personal, and the connection between the defendant's culpability and the perpetrator's premeditative state is too attenuated. (*Ibid.*)" (*Williams I, supra*, C076196.)

However, this court also noted that under *Chiu*, aiders and abettors may still be convicted of first degree premeditated murder but the " 'prosecution must show that the defendant aided or encouraged the commission of the murder with knowledge of the unlawful purpose of the perpetrator and with the intent or purpose of committing, encouraging, or facilitating its commission.' " (*Williams I, supra*, C076196, quoting *People v. Chiu, supra*, 59 Cal.4th at p. 167.) This court further quoted *Chiu* for the standard of review when a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect: " 'Defendant's first degree murder conviction must be reversed unless we conclude beyond a reasonable doubt that the jury based its verdict on the legally valid theory that defendant directly aided and abetted the premeditated murder. [Citation.]' " (*Williams I, supra*, C076196, quoting *Chiu*, at p. 167.)

Utilizing that standard, this court found that "[t]he two theories of accomplice liability are not tied to the evidence submitted by the prosecution. The prosecution's case overwhelmingly points to defendant as the shooter." (*Williams I, supra*, C076196.) This court also relied on case law that holds "a jury that finds the defendant was lying in wait 'necessarily' finds that the defendant also 'premeditated and intended the killings.' " (*Ibid.*, quoting *People v. Boyette* (2002) 29 Cal.4th 381, 436.) This court found that "[a]s a matter of law, the jury's true finding on the lying-in-wait special circumstance necessarily included the finding that defendant acted with the requisite mens rea for first

6

degree murder." This court concluded that "it is clear beyond a reasonable doubt that the jury found that defendant both intended and premeditated the killing, the error in instructing with CALCRIM No. 403 on the first degree murder charge was harmless." (*Williams I, supra*, C076196.)

This court also rejected defendant's contention that the special circumstance findings must be vacated because it could not be determined whether the jury found defendant guilty of first degree murder based on the natural and probable consequences theory. This court concluded that because both the lying-in-wait and gang-murder special circumstances each required the jury to find that defendant intentionally killed his victim, the jury necessarily found that defendant intended to kill Cousins and there was no error regarding the special circumstances. As stated, this court affirmed the convictions. However, this court remanded the cause for a new sentencing hearing for the trial court to exercise its discretion to impose consecutive or concurrent terms. (*Williams I, supra*, C076916.) Defendant was subsequently resentenced to 25 years to life.

### C. Proceedings under Section 1172.6

In July 2021, defendant filed a petition for relief from his murder conviction under former section 1170.95 (now § 1172.6).[7] The court appointed counsel for defendant. The People moved to dismiss the petition, arguing that the special circumstance finding of lying in wait demonstrated that the jury found defendant had the specific intent to kill. The People also argued that "[a] review of the appellate opinion also shows that the defendant was also the actual killer. Both of these findings render him ineligible for relief under the plain language of [section] 189(e)(1)-(3)." In response, defendant

---

[7] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no substantive changes in the text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

7

asserted that he was not the actual killer and did not, with intent to kill, aid, abet, or assist the actual killer in the commission of murder. He argued that because the jury was instructed on the natural and probable consequences theory of liability, he made a prima facie showing he was entitled to relief.

The court issued a tentative ruling in which it indicated that the record of conviction shows the jury made an express finding of specific intent to kill when it found true the lying-in-wait special-circumstance allegation. The court noted this is the malice necessary for first degree murder and, as a result, it appears that defendant is ineligible to seek relief under section 1172.6. However, the trial court ordered supplemental briefing and set the matter for a prima facie hearing.

The parties submitted supplemental briefs consistent with their previous arguments. Defendant argued[8] that the fact that the jury found the allegations that defendant personally used or discharged a firearm not true meant that the jury found defendant was an aider and abettor and, while the direct perpetrator harbored an intent to kill, there was no evidence that defendant harbored such intent as an aider and abettor. He also argued the court should not rely on this court's prior opinion that defendant was the actual killer, as it is a factual finding in conflict with the not true findings on the firearm and great bodily injury allegations.

Defendant further argued that because the jury was instructed on the natural and probable consequences theory of liability, the jury was permitted to find him guilty of first degree murder without finding he harbored the intent to kill and by inferring malice through his participation in the assault. Defendant criticized the fact that the jury was not instructed with CALCRIM No. 702, which would have required the jury to find that

---

[8] Defense counsel sought leave to incorporate defendant's pro. per. reply into counsel's reply; the trial court granted this request and considered all of defendant's arguments.

defendant, as an accomplice, had an intent to kill. Finally, defendant argued that he did not, with the intent to kill, aid, abet, or assist the actual killer in the commission of the murder. Defendant requested an evidentiary hearing regarding his murder conviction "and in the interest of justice consider [whether] [he] is entitled to relief for his attempted murder conviction."

At the prima facie hearing, the court stated it reviewed the verdict forms, which show that the allegations that defendant used a firearm were found not true and that "would seem to be inconsistent and would seem to lend some credibility to [defendant's] petition that he was convicted as an aider and abettor . . . because clearly the cause of death was a gun, a firearm. [¶] So that lent some support for that, although he was convicted of an attempted murder of Jaron Franklin, and the jury did find that attempted murder was committed willfully, deliberately and with premeditation which, of course, is express malice aforethought and would justify an intent to kill." But the court also noted that the jury found two special circumstances to be true. One of those circumstances was "the allegation that the murder of Paul Cousins was committed by defendant . . . and that defendant intentionally killed the victim while lying in wait within the meaning of Penal Code Section 190.2(a)(15)." "They also found true that [defendant] intentionally killed the victim while he was an active participant in a criminal street gang." The court then cited to this court's prior decision, in which this court stated that "a jury that finds the defendant was lying in wait 'necessarily' finds that the defendant also 'premeditated and intended the killings.' " (*Williams I, supra*, C076196.) The trial court concluded that, as a matter of law, the jury's true finding on the lying-in-wait special circumstance necessarily included the finding that defendant acted with the requisite mens rea for first degree murder and that because the jury found that defendant intentionally killed the decedent, he was not eligible for relief under the resentencing statute.

9

## DISCUSSION

### A. Additional Background

At trial, the court provided a special instruction that informed the jury that defendant was prosecuted under three theories of liability: as a direct perpetrator, aiding and abetting, and natural and probable consequences. The instruction further stated: "Each of these theories of liability has different requirements, and I will instruct you on all theories. [¶] You may not find the defendant guilty of any count unless all of you agree that the People have proved that count under at least one of the theories of liability. You do not all need to agree on the same theory."

As for first degree murder, the jury was instructed through CALCRIM No. 520, modified to omit implied malice. The jury was also instructed, consistent with CALCRIM No. 521, that "defendant has been prosecuted for first degree murder under the theory that the murder was willful, deliberate, and premeditated."

Regarding accomplice liability instructions, defense counsel expressed concern that, because this was "an opened-ended charge of murder," the jurors had to be given some guidance as to how to apply the laws in determining a nonshooter's criminal responsibility in the homicide. In response, the trial court modified CALRCIM No. 401 to instruct the jury that defendant had to personally have an express intent to kill. Defense counsel stated that this resolved his concern regarding accomplice liability.

As modified, CALCRIM No. 401 informed the jury in part: "To prove that the defendant is guilty of first degree murder based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed first degree murder; [¶] 2. The defendant knew that the perpetrator intended to commit first degree murder; [¶] 3. The defendant personally had an express intent to kill; [¶] 4. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator's commission of first degree murder; [¶] AND [¶] 5. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of first degree murder." As drafted,

10

CALCRIM No. 401 also provided a similar instruction, with the same elements as above but as to second degree murder and attempted murder. After providing the elements of the three offenses, the instruction then informed the jury: "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose and he specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime."

With CALCRIM No. 403, the jury was instructed as to the natural and probable consequence theory as it applied to murder, as charged in count one, and attempted murder, as charged in count two, based on the target crime of assault. The jury was further instructed, "A coparticipant in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander."

The jury was also informed that to find the special circumstances of lying in wait and active participation in a street gang true, the People had to "prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state. The instruction for each special circumstance explains the intent or mental state required." (CALCRIM No. 705.)

With respect to the special circumstance that defendant committed murder while an active participant in a criminal street gang, the jury was instructed in part: "[T]he People must prove that: [¶] 1. The defendant intentionally killed Paul Cousins; [¶] 2. At the time of the killing, the defendant was an active participant in a criminal street gang; [¶] 3. The defendant knew that members of the gang engage in or have engaged in a pattern of criminal gang activity; [¶] AND [¶] 4. The murder was carried out to further the activities of the criminal street gang. [¶] Please refer to the separate instructions I have given to decide whether the defendant aided and abetted the intentional killing of Paul Cousins." (CALCRIM No. 736.)

The jury was also separately instructed pursuant to CALCRIM No. 601, that if it found defendant guilty of attempted murder, it "must then decide whether the People

11

have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation" within the meaning of section 664. The instruction continued, in part: "The defendant/perpetrator acted willfully if he intended to kill when he acted. The defendant/perpetrator deliberated if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant/perpetrator premeditated if he decided to kill before acting. [¶] The attempted murder was done willfully and with deliberation and premeditation if either the defendant or the perpetrator or both of them acted with that state of mind." (CALCRIM No. 601.)

The trial court noted that CALCRIM No. 702 was withdrawn after the parties agreed that it did not apply in this case.[9]

During closing arguments, the prosecutor argued all three theories of liability, including the natural and probable consequences for murder and attempted murder. The prosecutor told the jury that under the natural and probable consequences doctrine, defendant did not have to have an intent to kill and "the gun allegation would go away because he didn't personally use a firearm."

*B. Analysis*

We begin with Senate Bill No. 1437's (2017-2018 Reg. Sess.) (Senate Bill 1437) amendments of sections 188 and 189, the enactment of section 1172.6, and subsequent statutory amendments.

As relevant here, "Senate Bill [ ] 1437 . . . amended the felony-murder rule" and "amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that '[m]alice shall not be imputed to a person based solely on

---

[9] The reason for this was not stated on the record; the trial court stated that after much discussion and research, the parties agreed the instruction did not apply.

12

his or her participation in a crime.' " (*People v. Harden* (2022) 81 Cal.App.5th 45, 50-51; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708.)

"Senate Bill 1437 also created a special procedural mechanism for those convicted under the former law to seek retroactive relief under the law as amended," codified in section 1172.6. (*People v. Strong, supra*, 13 Cal.5th at p. 708.) The original version of the statute permitted "a person with an existing conviction for felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to have the murder conviction vacated and to be resentenced on any remaining counts if he or she could not have been convicted of murder as a result of the other legislative changes implemented by Senate Bill [ ] 1437." (*People v. Flores* (2020) 44 Cal.App.5th 985, 992.)

Effective January 1, 2022, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) amended section 1172.6 and " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; see *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

As relevant here, to make a prima facie case for eligibility under section 1172.6, defendant had to show that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of murder or attempted murder under the natural and probable consequences doctrine. He must also show he was convicted of murder or attempted murder and that he could not presently be convicted of such because of changes to section 188 or 189. (§ 1172.6, subd. (a).) "When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' [Citations.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may

13

dismiss the petition. [Citations.] If, instead, the defendant has made a prima facie showing of entitlement to relief, 'the court shall issue an order to show cause.' " (*People v. Strong, supra*, 13 Cal.5th at p. 708, citing *People v. Lewis* (2021) 11 Cal.5th 952, 970-972; § 1172.6, subd. (c).)

"[T]he 'prima facie bar was intentionally and correctly set very low.' " (*People v. Lewis, supra*, 11 Cal.5th at p. 972.) The trial court must accept the defendant's allegations as true and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid*.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Id*. at p. 971.)

In this case, the trial court denied defendant's petition at the prima facie stage under section 1172.6, subdivision (c). A denial at this stage is appropriate only if the record of conviction demonstrates that defendant is ineligible for relief as a matter of law, that is, that the record of conviction shows that he was not convicted under a theory of liability affected by Senate Bill 1437's amendments to the law of murder or Senate Bill 775's amendments to the law regarding attempted murder. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams II*).)

It is undisputed that if defendant was the actual killer, he would not be entitled to relief under section 1172.6. (See *People v. Garcia* (2022) 82 Cal.App.5th 956, 969-971 [affirming denial of resentencing because record of conviction "unequivocally establishes" the defendant was the sole perpetrator and actual killer].) Although this court previously found the evidence "overwhelmingly points to defendant as the shooter," in light of the jury's not true findings on the firearm and great bodily injury allegations,

14

for purposes of determining whether defendant has made a prima facie case for relief under section 1172.6, we decline to conclude defendant was the actual shooter. (Cf. *People v. Henley* (2022) 85 Cal.App.5th 1003, 1017-1020 [jury's not true finding on the allegation that the defendant personally used a firearm barred the court from concluding in a § 1172.6 resentencing proceeding that she did use a firearm].)

As Senate Bill 1437 and its companion, Senate Bill 775, statutorily eliminated the natural and probable consequences doctrine as it relates to murder and attempted murder, the question before us is whether, without weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury convicted defendant under a legally valid theory of murder and attempted murder, i.e., as a direct aider and abettor. (See *People v. Harden, supra*, 81 Cal.App.5th at p. 56.)

This is a purely legal conclusion, which we review de novo. (See *Williams II, supra,* 86 Cal.App.5th at p. 1251.)

### 1. *First degree murder*

As defendant notes, the jury was instructed on three alternative paths to liability for both count one and count two: as the actual killer, as a direct aider and abettor of the shooter, or as an intentional aider and abettor of an assault. Defendant argues that it is reasonably probable the now-abrogated natural and probable consequences doctrine was used by one or more jurors as their basis for their findings of guilt as to murder and attempted murder as well as the firearm, great bodily injury, and special circumstance allegations, for three reasons. First, he argues the natural and probable consequences theory was specifically promoted and heavily relied upon by the prosecutor in closing statements, who also stressed that there need not be unanimity on any particular theory of liability and gave jurors hypothetical examples of how votes might be split but still collectively arrive at a guilty verdict. Next, he argues the jury's not true findings for the firearm and great bodily injury allegations "dovetail precisely" with the prosecutor's

15

suggested outcomes based on the natural and probable consequence doctrine. Finally, he argues the jury's true findings on the special circumstance allegations, which he claims were premised on the theory that defendant was the actual killer, are inconsistent with the not true findings on the firearm and great bodily injury allegations. He argues the true findings could have been based on the natural and probable consequences doctrine, as the jury was not provided with an instruction on aider and abettor liability for special circumstances through CALCRIM No. 702. We disagree.

At trial, the prosecutor's argument was not entirely based on the natural and probable consequence doctrine. As the People note, the prosecutor argued all three theories of liability and, in doing so, repeatedly told the jury that he was only providing the "short" version of these instructions; the jury was required to "look at the elements" as provided in the instructions. Moreover, a prosecutor's closing argument does not set forth a specific factual basis for a jury's verdict because a prosecutor's argument is "not binding on the jury or the court." (*People v. Leonard* (2014) 228 Cal.App.4th 465, 500.) Our Supreme Court has explained, "It is elementary . . . that the prosecutor's argument is not evidence and the theories suggested are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)

Additionally, and as discussed below, the gang-murder special-circumstance allegation was not confined to the theory that defendant was the actual killer but rather included the theory of direct aiding and abetting, separate and aside from the natural and probable consequences doctrine. Thus, also contrary to defendant's claim, the jury's not true findings on the firearm and great bodily injury allegations do not necessarily mean the jury rendered any verdict or finding under the natural and probable consequences doctrine in response to the prosecutor's argument.

Also contrary to defendant's claim, we find the not true findings on the firearm and great bodily injury allegations are not inconsistent with the true findings on the special circumstance allegations. The jury's not true findings on the firearm and great

16

bodily injury allegations were the equivalent to an acquittal. Because the burden of proof was on the prosecution, an acquittal will usually mean only that the jury was not convinced beyond a reasonable doubt of a fact advanced by the prosecution. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 440.) Although not considered at the prima facie stage in this appeal, it remains a possibility that the jury found he was the actual killer but because of " 'mistake, compromise or lenity' " found the firearm and great bodily injury allegations not true. (*People v. Avila* (2006) 38 Cal.4th 491, 600.) Furthermore, while it may have been difficult for jurors to unanimously agree as to the identity of the shooter, their verdict reflects they had no difficulty concluding defendant was liable for first degree murder under the theory of direct aiding and abetting.

Defendant asserts the instructions on the special circumstances were fatally flawed because they referred to defendant as the actual killer and did not provide clear directions regarding accomplice liability as an aider and abettor. Although he acknowledges the jury was given CALCRIM No. 401, the aiding and abetting an intentional murder instruction, he argues that if the jury referred to that instruction, it was possible doing so led the jury to consider whether defendant aided and abetted the assault when that instruction referred to someone aiding and abetting *a crime*. According to defendant, it is also reasonably likely that the jury followed the aiding and abetting instruction on the natural and probable consequences doctrine when considering the special circumstances instructions. We are not persuaded.

To prove the special circumstances, the jury was informed that the People had to "prove not only that the defendant did the acts charged, but also that he acted with a particular intent or mental state." (CALCRIM No. 705.) Thus, the jury was informed regarding the necessity of a physical act (actus rea) and the requisite accompanying mental state (mens rea).

As for the required mental state, the jurors were instructed that the special circumstance finding of active participation in a criminal street gang required the jury to

17

find an intentional killing, rather than a killing based on the natural and probable consequences doctrine, or due to the defendant's participation in a felony. (§ 190.2, subd. (a)(22); see CALCRIM No. 736; see also *People v. Navarro* (2021) 12 Cal.5th 285, 308 [a special circumstance for murder committed for the benefit of a criminal street gang requires a finding of intent to kill].)

As for the physical act required, defendant contends that because the jury found he was not the actual killer, there is a material conflict in the verdicts where the jury also found true the special circumstance that defendant intentionally killed Cousins. He argues that given the not true findings on the firearm allegations, he could only be properly convicted of murder as a direct aider and abettor—the possibility of which he claims was thwarted because the jury was not instructed as to aiding and abetting principles, such as with CALCRIM No. 702. We find that although CALCRIM No. 702 was not given, the gang-murder special-circumstance instruction did provide direction regarding aiding and abetting principles when it referred the jury to instructions on aiding and abetting an intentional killing.[10]

Specifically, in the gang-murder special-circumstance instruction (CALCRIM No. 736) the jury was told to "refer to the separate instructions I have given to decide whether the defendant aided and abetted the intentional killing of Paul Cousins." The reference to separate aiding and abetting instructions in the gang-murder special-

---

**10**    CALCRIM No. 702 would have instructed the jury that if it found defendant was not the actual killer, in considering the special circumstances, the jury had to find that the defendant acted with the intent to kill. Yet the language of CALCRIM No. 702 says it applies to offenses listed in section 190.2, subdivision (a)(2) through (a)(6). As the special circumstance regarding a gang murder is under subdivision (a)(22) and lying in wait is under subdivision (a)(15), it appears this instruction was not required. In addition, because the instructions on each special circumstance and the modified instruction regarding aiding and abetting an intentional killing all required the jury to find that defendant intended to kill the victim, instructing on CALCRIM No. 702 would have been redundant.

18

circumstance instruction could not implicate the instruction on aiding and abetting under the natural and probable consequences doctrine (CALCRIM No. 403) because the aiding and abetting referred to in CALCRIM No. 403 only applied to aiding and abetting the assault. Instead, the instruction pertaining to aiding and abetting an intentional killing, as referenced in the gang-murder special-circumstance instruction, could only be CALCRIM No. 401, the instruction on aiding and abetting an intentional killing. CALCRIM No. 401 was modified to require the People to prove that a perpetrator committed first degree murder, that defendant knew the perpetrator's intent to commit first degree murder, *defendant personally had an express intent to kill, and defendant intended to, and did in fact, aid and abet the perpetrator in committing first degree murder*. (CALCRIM No. 401.) Thus, the jury's true finding on the gang-murder special circumstance necessarily means the jury found defendant shared the perpetrator's intent to kill Cousins and actually aided and abetted the perpetrator in killing Cousins and was connected to a valid theory of accomplice liability. Contrary to defendant's claim, the fact that the instruction later referred to someone aiding and abetting *a crime* does not invite the jury to consider the assault as the intended crime. Rather, it reiterates the elements that were just instructed as to first degree, second degree, or attempted murder. A reasonable juror would not have been confused about the relationship between aiding and abetting an intentional killing and the natural and probable consequences doctrine; the latter was not implicated by the gang-murder special-circumstance instructions. Moreover, because the gang-murder special circumstance provided an opportunity to find defendant was an aider and abettor, there is no potential conflict between the jury's findings of not true on the firearm allegations and the true findings on the gang-murder special circumstance.

We find *People v. Pacheco* (2022) 76 Cal.App.5th 118 instructive, albeit in a distinguishing manner. There, the trial court instructed on the natural and probable consequences doctrine; the defendant was convicted of first degree murder, as an aider

19

and abettor, and a gang-murder special circumstance was found true. (*Id*. at pp. 121-122.) The defendant petitioned for relief under section 1172.6. (*Pacheco*, at p. 121.)

The appellate court held that the true finding on the gang-murder special circumstance did not conclusively establish that the defendant was guilty of murder without resort to the natural and probable consequences doctrine because the gang-murder special-circumstance instruction did not instruct the jury regarding principles of aiding and abetting the murder. (*People v. Pacheco, supra*, 76 Cal.App.5th at pp. 127-128.) Instead, the aiding and abetting instructions informed the jurors they could find the defendant guilty of murder if he aided and abetted one of the three target crimes (assault with a deadly weapon, assault, or disturbing the peace) and the nontarget crime (murder) was a natural and probable consequence of one of the target crimes. As a result, the jury could have potentially found the defendant intended to kill the victim under the gang-murder special-circumstance enhancement (the mens rea), but also found under the natural and probable consequence theory, that the defendant only actually aided and abetted a nontarget offense (the actus reus). (*Id.* at p. 128.) "In other words, without weighing the evidence, it is possible Pacheco intended to kill, but he did nothing to directly 'aid, facilitate, promote, encourage, or instigate' the [non]target crime of murder. [Citation.]" (*Ibid*.)

Here, unlike in *Pacheco*, the gang-murder special-circumstance instruction did refer the jury to the instruction on direct aiding and abetting. Accordingly, unlike in *Pacheco*, there was no opportunity for the jury to find defendant intended to kill Cousins and, under the natural and probable consequence theory of aiding and abetting, that he only aided and abetted the assault. A jury would not have been confused about applying CALCRIM No. 401, the instruction regarding aiding and abetting an intentional killing, where the gang-murder special-circumstance instruction told it to do so. The jury instruction covering aiding and abetting the intentional killing required the jury to find that, if defendant was acting as an accomplice, he must have shared the perpetrator's

20

intent to kill and aided and abetted the killing. "We presume the jury followed the instructions it was given." (*People v. Chism* (2014) 58 Cal.4th 1266, 1299.)

This conclusion is entirely consistent with *Curiel, supra*, 15 Cal.5th 433. In *Curiel*, the Supreme Court determined that where the jury was permitted to find aiding and abetting liability for murder based on the now-prohibited natural and probable consequences doctrine, the abstract presence of an intent to kill was not enough to show that the defendant remained guilty of murder after the recent amendments to section 188. It still must be established that the defendant knew the perpetrator intended to kill and acted to aid the commission of that killing. (*Curiel*, at p. 463.) Here, because the jury instruction on the gang-murder special circumstance, as modified to incorporate the instruction on aiding and abetting an intentional killing, required the jury to find both that defendant acted with an intent to kill and that he either intentionally killed the victim or aided and abetted the victim's intentional killing, his conviction is still viable under sections 188 and 189. (See CALCRIM No. 705.)

Thus, we conclude that as a matter of law the jury finding of true on the special circumstance of active participation in a criminal street gang establishes defendant's ineligibility for resentencing on his murder conviction. Because the jury finding on the gang-murder special circumstance is dispositive, we need not address whether the lying-in-wait special circumstance also renders defendant ineligible for resentencing under section 1172.6. (See *People v. Brooks* (2017) 3 Cal.5th 1, 39 [reviewing court may uphold the trial court's ruling if it is supported by any legally correct theory].)

Defendant's reliance on Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333)—which he raises for the first time in his supplemental brief on remand in light of *Curiel*—does not alter our conclusion. Assembly Bill 333 amends section 186.22 to require proof of additional elements to establish a gang enhancement and applies retroactively to cases not final on appeal. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344.) Assembly Bill 333 went into effect on January 1, 2022,

21

when defendant's case was final on appeal, but prior to the prima facie hearing on the petition. We find no indication from the record that the applicability of Assembly Bill 333 was raised in the trial court. Defendant's failure to raise this instructional issue in the trial court forfeits any issue with respect to it on appeal. (See *People v. Covarrubias* (2016) 1 Cal.5th 838, 919.) Nor was the issue raised on appeal from the trial court's summary denial of the petition for resentencing. When the Supreme Court remands with instructions, those directives "define[] the scope of the jurisdiction of the court to which the matter is returned." (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701.) Here, the Supreme Court directed us to "vacate [our] decision and reconsider the cause in light of *People v. Curiel* (2023) 15 Cal.5th 433." As *Curiel* did not discuss the applicability of Assembly Bill 333, addressing the issue on remand in light of *Curiel* exceeds the scope of the transfer. Moreover, to the extent defendant raises challenges to his trial unrelated to the changes brought about by Senate Bill 1437, section 1172.6 does not authorize those challenges. (*People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [§ 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].) As a final note, we reject defendant's argument that the trial court engaged in improper factfinding when it cited to this court's prior decision in which we opined that the evidence overwhelmingly pointed to defendant being the actual killer. Defendant characterizes this as inappropriate judicial factfinding by the trial court. The reality is the trial court merely quoted from our previous opinion and did not rely on it in rendering its ruling. Defendant is ineligible for resentencing on his murder conviction under section 1172.6 as a matter of law and he cannot establish that he would have been afforded an evidentiary hearing absent error by the court. (*People v. Lewis, supra*, 11 Cal.5th at pp. 972-974.)

   2. *Attempted premeditated murder*

   Defendant argues he made a prima facie showing he is entitled to relief on his attempted murder conviction because, notwithstanding the finding the jury made that the

crime was premeditated, the instructions did not properly instruct the jury to find defendant had the requisite mental state. Again relying on the jury's finding the firearm allegations not true, defendant argues that it is reasonably likely the jury used the natural and probable consequence instruction to determine his liability as an accomplice. He argues this must be so because the jury was not instructed on CALCRIM No. 702 and, in light of the natural and probable consequences instruction, the jury could have found he aided and abetted an assault without any intent to kill. The People argue defendant forfeited this claim when he failed to amend his petition to include a challenge to his conviction for first degree murder. The People note that Senate Bill 775, which clarified the provisions under section 1172.6 applied to attempted murder, became effective after defendant filed his petition but before the prima facie hearing.

We agree that the petition does not appear to include a challenge to defendant's attempted murder conviction. Even assuming defendant's request, made in passing, that the trial court "in the interest of justice consider [whether] [he] is entitled to relief for his attempted murder conviction" was sufficient to place the issue before the trial court, defendant never sought a ruling, or clarification of the ruling as applied to attempted murder. Nevertheless, we exercise our discretion to address the issue because it raises a pure question of law, does not require the resolution of disputed factual issues, and the parties have addressed the merits of the claim. (*People v. Dunley* (2016) 247 Cal.App.4th 1438, 1447.)

The People argue that, by finding that the attempted murder was premeditated, the jury determined defendant acted with the intent to kill and therefore had the requisite mental state required for a valid conviction under the amended law. We conclude that under the circumstances of this case, the premeditation finding was insufficient to establish defendant's ineligibility for relief under section 1172.6.

The jury was instructed on the elements of attempted murder under CALCRIM No. 600. The instruction did not refer the jury to any aiding and abetting instruction.

23

Thus, the jury was not informed whether or how to apply either the instruction on aiding and abetting an intentional killing under CALCRIM No. 401 or the instruction regarding aiding and abetting under the natural and probable consequences doctrine under CALCRIM No. 403. The jury could have relied on either or neither instruction.

The jury's finding of premeditation does not provide clarity on the jury's belief as to defendant's mental state, because the instruction did not require the jury find that defendant himself acted with premeditation and deliberation. As noted *ante*, CALCRIM No. 601 instructed the jury to determine "whether the People have proved the additional allegation that the attempted murder was done willfully, and with deliberation and premeditation," but it also informed the jury "[t]he attempted murder was done willfully and with deliberation and premeditation if *either the defendant or the perpetrator or both* of them acted with that state of mind." (CALCRIM No. 601, italics added.) When the jury found the allegation true, it simply indicated its agreement that "the attempted murder was committed willfully, deliberately and with premeditation," but did not specify that it was done by defendant. Thus, the special finding of premeditation reveals the jury's determination that *a participant* committed the attempted murder willfully, deliberately, and with premeditation, but that finding cannot be said, as a matter of law, to be tethered specifically to defendant.

Accordingly, as to the premeditated attempted murder conviction, we conclude the record does not show as a matter of law the jury did not rely on the invalid theory of natural and probable consequences in finding defendant guilty. Therefore, the premeditation findings are insufficient to establish defendant's ineligibility for relief such that an evidentiary hearing is required.

## DISPOSITION

The trial court's summary denial of defendant's petition for relief under section 1172.6 as to defendant's murder conviction is affirmed but as to the attempted murder conviction is reversed and remanded for an evidentiary hearing.

                                          /s/
                                       EARL, P. J.

We concur:

    /s/
HULL, J.

    /s/
DUARTE, J.